**<u>EXHIBIT A</u>**

**[Proposed Interim Order]**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | Chapter 11 |
| XTERA COMMUNICATIONS, INC., *et al.*, | Case No.  16- 12577 (__) |
| Debtors. [1] | (Jointly Administered) |
|  | **Re: D.I. ____** |

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES AND (III) GRANTING RELATED RELIEF AND (III) SCHEDULING A FINAL HEARING

Upon the motion (the "**Motion**")[2] of Xtera Communications, Inc. ("**Xtera Inc.**") and the other debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for interim and final relief under sections 105(a), 361, 362, 363(c), 363(m), 364(c)(l ), 364(c)(2), 364(d)(l), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy  Rules**"), and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended, the "**Local Rules**") seeking, among other things:

(I)     authorization for Xtera Inc., as borrower (the "**Borrower**"), to obtain, and for each of the other Debtors to guarantee (in such capacities, the "**Guarantors**" and, together with the Borrower, the "**Loan Parties**") secured postpetition financing (the "**DIP Financing**") in the form of a term loan

---

[1]     The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Xtera Communications, Inc. (4611); Xtera Communications, Ltd. (9610); Xtera Communications Canada, Ltd. (2053); Xtera Communications Hong Kong Ltd. (7411); PMX Holdings, Ltd (4611); Azea Networks, Inc. (7821); Neovus, Inc. (2940); and Xtera Asia Holdings, LLC (4611). The mailing address for the Debtors, solely for purposes of notices and communications, is 500 W. Bethany Drive Suite 100 Allen, TX 75013.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Documents, as applicable.

facility (the "**DIP Facility**") in an aggregate principal amount of up to $7,409,793 (the "**DIP Loans**"), on the terms and conditions set forth in this Order (this "**Interim Order**") and the DIP Documents (as defined below);

(II)      authorization for the Loan Parties to execute and deliver the Debtor-in-Possession Credit Agreement dated as of the date of this Interim Order, among the Borrower, the Guarantors, the lenders from time to time party thereto (the "**DIP Lenders**"), and Wilmington Trust, National Association ("**Wilmington Trust**"), as administrative agent and collateral agent (collectively, in such capacities, the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**"), substantially in the form annexed to the Motion as <u>Exhibit A</u> (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**", and, collectively with the schedules and exhibits attached thereto, all agreements, documents, certificates, instruments and/or amendments executed by and/or delivered by or to any Loan Party in connection therewith and the Orders, the "**DIP Documents**") and to perform all such other and further acts as may be required in connection with the DIP Documents;

(III)      the granting to the DIP Agent (for the benefit of the DIP Secured Parties) of the DIP Liens and the DIP Superpriority Claims (each as defined below);

(IV)      authorization for the DIP Agent to exercise remedies under the DIP Documents and modification of the stay upon the occurrence and during the continuance of an Event of Default;

(V)      approval of certain stipulations by the Debtors with respect to the Existing Agreements (as defined herein) and the obligations, liens and security interests arising therefrom, subject to the rights preserved for parties in interest in Paragraph 24 of this Interim Order;

(VI)      subject only to and effective upon entry of the Final Order (as defined below), the waiver of (i) Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (as defined below)

pursuant to section 506(c) of the Bankruptcy Code; and (ii) any rights of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(VII)  granting adequate protection to the Prepetition Secured Parties (as defined below);

(VIII)  modification of the automatic stay to the extent set forth in this Interim Order;

(IX)  pursuant to Bankruptcy Rule 4001, scheduling an interim hearing on November __, 2016 (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of  the Interim Order;

(X)  scheduling a final hearing (the "**Final Hearing**") to be held within twenty-five (25) days of the entry of the Interim Order to consider entry of a final order (the "**Final Order**" and together with the Interim Order, the "**Orders**") approving the relief granted herein on a final basis and authorizing the Borrower to borrow, and the Guarantors to guarantee, up to the full amount of the DIP Financing.

The Debtors having commenced the Chapter 11 Cases and filed and served the Motion on the Petition Date; and appropriate notice of the Motion and the Interim Hearing having been served by the Debtors on the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), holders of the combined 20 largest unsecured claims against the Debtors, counsel to the DIP Agent, counsel to the Prepetition Secured Parties, counsel to Horizon Funding Trust 2013-1; the Bridge Loan Investors;  the Internal Revenue Service, the Securities Exchange Commission, and the United States Attorney's Office for the District of Delaware (the "**Notice Parties**"); and it appearing that no further notice of the Motion and the Interim Hearing need be provided under the circumstances; and the Court having reviewed the Motion; and the Interim Hearing having been held before this Court; and upon the record made by the Debtors in the Motion, in the *Declaration of Joseph R. Chinnici in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") [D.I. ____], and the other evidence admitted or adduced and the arguments of counsel made at the Interim Hearing; and the Court

having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates;  and the Court having determined that the legal and factual bases set forth in the Motion and on the record before the Court establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Approval of Motion.*  The relief requested in the Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.

2.      *Jurisdiction.* This Court has core jurisdiction over the Chapter 11 Cases, the Debtors, the Motion, and the parties and exclusive jurisdiction over the property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Notice.*  Proper, timely, adequate and sufficient notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in Paragraph 36 below.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

4.      *Debtors' Stipulations.* Subject to the limitations contained in Paragraph 24 below, the Debtors admit, stipulate and agree as follows, for themselves and their estates:

(a)      <u>Prepetition Secured Obligations.</u>  As of the date of the filing (the "**Petition Date**") of the Debtors' chapter 11 cases (the "**Chapter 11 Cases**"), the Debtor-parties to the Existing

Agreements[3] (collectively, the "**Prepetition Obligors**") were truly and justly indebted, without defense, counterclaim or offset of any kind, to: (i) the lender party to the Prepetition Senior Loan Agreement (the "**Prepetition Senior Lender**"), in the aggregate principal amount of not less than $8,059,610.46 in respect of loans and other extensions of credit made pursuant to the Prepetition Senior Loan Agreement, plus accrued and unpaid interest thereon and all premiums, expenses, indemnity, and reimbursement obligations accrued thereunder and all other fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Senior Loan Documents (the "**Prepetition Senior Loan Obligations**"); (ii) the lender party to the Prepetition Subordinated Loan Agreement (the "**Prepetition Subordinated Lender**") in the aggregate principal amount of not less than $6,155,037.56 in respect of loans and other extensions of credit made pursuant to the Prepetition Subordinated Loan Agreement, plus accrued and unpaid interest thereon and all premiums, expenses, indemnity, and reimbursement obligations accrued thereunder and all other fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Subordinated Loan Documents (the "**Prepetition Subordinated Loan Obligations**"); and (iii) each lender party to a Prepetition Bridge Loan Document (collectively, the "**Prepetition Bridge Loan Lenders**", and together with the Prepetition Senior Lender and the Prepetition Subordinated Lender, the "**Prepetition Secured Parties**") in the aggregate principal amount (collectively for all Prepetition Bridge Loan Lenders) of not less than $1,203,616.44 in respect of extensions of credit made pursuant to the Prepetition Bridge Loan Notes, plus accrued and unpaid interest thereon and all premiums, expenses, indemnity, and reimbursement obligations accrued thereunder and all other fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Bridge Loan

---

[3]        "**Existing Agreements**" as used herein shall mean the Prepetition Senior Loan Agreement, the Prepetition Subordinated Loan Agreement, the Prepetition Bridge Loan Documents together with ancillary agreements including any security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified.

Documents (the "**Prepetition Bridge Loan Obligations**" and collectively with the Prepetition Senior Loan Obligations, Prepetition Subordinated Loan Obligations, the "**Prepetition Secured Obligations**");

(b)  Prepetition Secured Obligations.  The Prepetition Secured Obligations in the full amount outstanding on the Petition Date constitute the legal, valid and binding and non-avoidable obligations of the Prepetition Obligors to the relevant Prepetition Secured Parties to the Existing Agreements.

(c)  Prepetition Liens.  The liens and security interests granted by the Prepetition Obligors to the Prepetition Secured Parties (the "**Prepetition Liens**") are: (i) valid, binding, perfected, enforceable liens on and security interests in the personal property of each Prepetition Obligor constituting "Collateral" under, and as defined in, any prepetition security agreement, control agreement, pledge agreement, financing statement, mortgage or other similar documents (together, the "**Prepetition Collateral**"); and (ii) not subject to objection, defense, contest, avoidance, reduction, or disallowance (whether equitable, contractual or otherwise) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity.

(d)  Prepetition Senior Loan Liens.  The Prepetition Liens securing the Prepetition Senior Loan Obligations (the "**Prepetition Senior Loan Liens**") are subject and subordinate only to: (i) after giving effect to this Interim Order, the Carve-Out and the DIP Liens; and (ii) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) which are permitted under the Prepetition Senior Loan Documents and to the extent such permitted liens are senior to the Prepetition Senior Loan Liens.

(e)  Prepetition Subordinated Loan Liens.  The Prepetition Liens securing the Prepetition Subordinated Loan Obligations (the "**Prepetition Subordinated Loan Liens**"), are subject

and subordinate only to: (i) after giving effect to this Interim Order, the Carve-Out and the DIP Liens; (ii) the Prepetition Senior Loan Liens; and (iii) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) which are permitted under the Prepetition Subordinated Loan Documents and to the extent such permitted liens are senior to the Prepetition Subordinated Loan Liens.

(f)     Prepetition Bridge Loan Liens.  the Prepetition Liens securing the Prepetition Bridge Loan Obligations (the "**Prepetition Bridge Loan Liens**"), are subject and subordinate only to: (i) after giving effect to this Interim Order, the Carve-Out and the DIP Liens; (ii) the Prepetition Senior Loan Liens; (iii) the Prepetition Subordinated Loan Liens; and (iv) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) which are permitted under the Prepetition Bridge Loan Documents and to the extent such permitted liens are senior to the Prepetition Bridge Loan Liens.

(g)     Depository Accounts.  All cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any depository institution (collectively, the "**Depository Institutions**") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Existing Agreements and applicable law, for the benefit of the Prepetition Secured Parties.

(h)     Cash Collateral.  All proceeds of the Prepetition Collateral (including cash on deposit at Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy

Code (the "**Cash Collateral**"), and shall be held in accordance with the DIP Credit Agreement and subject to the terms of this Interim Order (including subject to the DIP Liens).

(i)    <u>Releases</u>.    Subject to entry of the Final Order and the Challenge Period, the Debtors hereby forever, unconditionally and irrevocably release, discharge, and acquit the DIP Agent, the DIP Lenders, and each of the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' and financial advisors' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the DIP Facility, the DIP Documents, the Existing Agreements and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the extent, validity, priority, perfection, or avoidability of the DIP Liens, the DIP Obligations (as defined below), the Prepetition Liens, and the Prepetition Obligations. The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the DIP Obligations and the Prepetition Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court entering this Interim Order.

5.    *Indemnity*.    The Debtors shall, jointly and severally, be obligated to indemnify and hold harmless each of (v) the Prepetition Senior Lender, (w) the DIP Agent, and (x) the DIP Lenders and

each of their respective affiliates, equity holders, partners, managers, investors, officers, directors, fiduciaries, employees, agents, trustees, advisors, attorneys and representatives (each, an "**Indemnified Person**") from and against all losses, claims, liabilities, damages, and expenses (including, without limitation, as to each of (i) the Prepetition Senior Lender, (ii) the DIP Agent and (iii) the DIP Lenders, in each case of and from the reasonable and documented fees and out-of-pocket disbursements of one primary counsel, one local counsel and one financial advisor, and, if necessary, a single special counsel for each relevant specialty) in connection with any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility or any other transactions contemplated under the DIP Documents except to the extent arising from any dispute solely among Indemnified Persons which does not arise out of any act or omission of the Debtors (other than any proceeding against any Indemnified Person solely in its capacity or in fulfilling its role as the DIP Agent or any similar role); provided, that, no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from the bad faith, fraud, gross negligence or willful misconduct of such Indemnified Person. Further, the Debtors shall continue to perform and shall be obligated in all respects with respect to the indemnification obligations in favor of the Prepetition Secured Parties set forth in the Existing Agreements if and to the extent such indemnification claims are allowable under Section 502 or Section 506(b) of the Bankruptcy Code (measured without giving effect to the DIP Loans).

6.      *Findings Regarding the DIP Loans, the Use of the Prepetition Collateral.*

(a)      <u>Good and Sufficient Cause</u>.  Good cause has been shown for the entry of this Interim Order.

(b)      <u>Immediate Need for Financing</u>.  The Loan Parties have an immediate need to obtain the DIP Loans and continue to use the Prepetition Collateral (other than Cash Collateral) in order

to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with employees, vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy the costs of administration of the Chapter 11 Cases, and to provide for other working capital and operational needs.  The access of the Loan Parties to sufficient working capital and liquidity through the incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents is necessary and vital to maximizing the Debtors' enterprise value for all constituencies, and to preserving the Debtors' assets for the benefit of their creditors and their estates.

(c)     Best Financing Available.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the Motion and are unable to obtain adequate unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(l), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting priming liens under section 364(d)(l) of the Bankruptcy Code and the DIP Superpriority Claims on the terms and conditions set forth in this Interim Order and the DIP Documents.

(d)     Fair and Reasonable Terms.  Based on the record before the Court at the Interim Hearing, the terms of the DIP Financing and the terms on which the Loan Parties may continue to use the Prepetition Collateral (other than Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     Arm's Length Negotiations.  The DIP Documents and the use of the Prepetition Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length among the Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties, and all of the

Loan Parties' obligations and indebtedness arising under or in connection with the DIP Documents and this Interim Order, including without limitation the indemnity provided for in paragraph 5, (collectively, the "**DIP Obligations**") shall be deemed to have been extended by the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)     <u>Immediate and Irreparable Harm</u>.   Absent granting the relief set forth in this Interim Order, the Loan Parties and their business operations will be immediately and irreparably harmed.  In particular, the Loan Parties require immediate postpetition financing, and continued use of the Prepetition Collateral (other than Cash Collateral) in order to, among other things, permit the orderly continuation of their businesses, maintain and generate the confidence of customers, vendors and employees and preserve the going concern value of the Loan Parties and the other Debtors.  The borrowing of the DIP Loan and the use of the Prepetition Collateral in accordance with this Interim Order and the DIP Documents are, therefore, in the best interest of the Loan Parties.

7.     *Authorization of the DIP Loans and the DIP Documents.*

(a)     <u>Authority to Borrow</u>.  The Loan Parties are hereby authorized to execute, deliver, and perform all obligations under, the DIP Documents.  The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guarantee the DIP Obligations, subject to any limitations on borrowing under the DIP Documents, to be used for all purposes permitted under, and subject to the terms and conditions of, the DIP Documents, and pay all Fees incurred pursuant to the DIP Documents.

(b)      Funding Account.  On the Closing Date, in accordance with Section 2.02 of the

DIP Credit Agreement, the proceeds of the DIP Loans shall be funded or credited to a trust account

established at Wilmington Trust, which is and shall remain subject to the exclusive control and

dominion of the DIP Agent for the benefit of the DIP Lenders (the "**Funding Account**"), subject to the

terms of the Orders and the DIP Credit Agreement.  On the Closing Date (and solely with respect to

(iii) below upon the entry of the Final Order), Wilmington Trust shall be authorized pursuant to a

funding authorization letter from the Borrower to immediately (including, for the avoidance of doubt,

simultaneously with the initial funding of the DIP Loans, if applicable) transfer funds to: (i) pay all

accrued but unpaid reasonable and documented fees and expenses of counsel and financial advisors to

the Prepetition Senior Lender, the DIP Lender (with respect to each of the Prepetition Senior Lender

and the DIP Lenders in an amount not greater than the amount set forth in the Budget) and the DIP

Agent (up to a maximum amount of $25,000), each in accordance with the DIP Documents; (ii) the

Debtors in the sum of $2,425,679 (on account of the immediate funding needs of the Debtors on or

about the Petition Date as set forth in the initial Budget (as defined below)); and (iii) DLA Piper LLP

(US) to establish the Professional Fee Reserve in accordance with the DIP Credit Agreement.  On and

after the Closing Date, certain funds of the Debtors (including, without limitation, (x) net cash proceeds

of DIP Collateral and Prepetition Collateral disposed of by the Debtors in the ordinary course of

business and (y) all other cash received or held by the Debtors) shall, in accordance with the DIP Credit

Agreement, be deposited into the Funding Account. The Debtors may, subject to conditions precedent

set forth in the DIP Credit Agreement, withdraw or apply funds from the Funding Account solely to (i)

pay one or more disbursements set forth in the then-effective Budget in an amount not to exceed the

amount for such disbursements set forth in the then-effective Budget (subject to Permitted Variances

(as defined below) thereto); or (ii) pay any fees or other amounts due and payable to the Prepetition

Senior Lender, the DIP Lenders or the DIP Agent (with respect to each of the Prepetition Senior Lender and the DIP Lenders in an amount not greater than the amount set forth in the Budget), which, for the avoidance of doubt, are not subject to Permitted Variances, up to the maximum amount allowable under the Budget. The Funding Account shall be a trust account of the DIP Lenders maintained with Wilmington Trust and will not constitute property of the Debtors or their estates.  Notwithstanding anything to the contrary in this Paragraph 7(b) or elsewhere in this Interim Order, the Debtors may, subject to conditions precedent set forth in the DIP Credit Agreement, withdraw or apply funds from the Funding Account to the pay the fees and costs of the DIP Lenders accrued in accordance with the DIP Documents from available funds in the Funding Account that are in excess of an amount equal to the available proceeds of the DIP Loan held in the Funding Account at any given time.

(c)      Compliance with Budget.  The Debtors are hereby authorized to use the funds in the Funding Account pursuant to the DIP Documents, and subject to the Budget.  For the avoidance of doubt, withdraw or application of funds from the Funding Account shall only be made at the times and in the amounts set forth in the Budget or as otherwise agreed to by the DIP Agent and the DIP Lenders.

(i)      For purposes hereof: (a) "**Budget**" means a 13-week operating budget, which forecast shall be in form and substance satisfactory to the Required Lenders (as defined in the DIP Credit Agreement) **and the Prepetition Senior Lender**, setting forth all forecasted cash receipts and cash disbursements of the Debtors and their subsidiaries on a weekly basis for such 13-week period beginning as of the week of the Petition Date, which shall include, among other things, available cash, receipts, cash flow, trade expenditures and ordinary course expenses, total expenses and capital expenditures, fees and expenses relating to the DIP Facility, fees and expenses related to these Chapter 11 Cases, working capital and other general corporate financial needs; provided, that, each such proposed budget shall only be deemed to constitute a new Budget if consented to in writing by the

Required Lenders **and the Prepetition Senior Lender**; and (b) "**Permitted Variances**" means (i) all variances that are favorable to the financial condition and the interests of the Loan Parties and the interests of the DIP Lenders, and (ii) any variance that is unfavorable to the financial condition and the interests of the Loan Parties or the interests of the DIP Lenders and does not exceed 5.0%, tested weekly (commencing at the end of the first calendar week ending after the Petition Date) on a non-cumulative basis (other than with respect to fees and expenses of outside legal counsel to the Prepetition Senior Lender, DIP Agent and the DIP Lenders, which shall be tested on a cumulative basis for the pendency of the Chapter 11 Cases), based upon the Budget.

(ii)    The Budget, the initial version of which is annexed hereto as Exhibit 1,[4] shall permit the use of such funds: to pay (x) all fees due to the DIP Lenders (including, without limitation, the fees described below) under the DIP Loan Documents and (y) all reasonable pre- and post-petition professional fees and expenses (including legal, financial advisor, appraisal and valuation-related fees and expenses) incurred by the Prepetition Senior Lender and the DIP Lenders, including, without limitation, those incurred in connection with the preparation, negotiation, documentation and court approval of the DIP Documents; (y) to provide working capital to the Debtors (but not, for the avoidance of doubt, any equity holder or other affiliate of the Borrower except as otherwise may be permitted under the DIP Credit Agreement); and (z) to fund the costs of administration of these Chapter 11 Cases (including Debtors' and Creditors' Committee's professional fees and expenses), subject to the Budget (subject to Permitted Variances). Notwithstanding that the fees and expenses of the DIP Agent are not included within the Budget, the Debtors are hereby authorized to pay all fees due to the DIP Agent under the DIP Documents (including, without limitation, the reasonable pre- and post-petition professional fees and expenses of its legal advisors, financial advisors, and appraisal and valuation

---

[4]    Copies of any additional or revised Budgets approved by the Required Lenders shall be provided to counsel for the Creditors' Committee and the U.S. Trustee.

advisors), including, without limitation, those incurred in connection with preparation, negotiation, documentation and court approval of the DIP Documents.

(d)    <u>All Required Action</u>.    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of this Interim Order, security agreements, mortgages and financing statements), and to pay all fees, expenses, costs and indemnities, in each case that may be reasonably required or necessary for the Loan Parties' performance of their obligations under the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Documents and, subject to entry of the Final Order and the challenge rights set forth in Paragraph 24 hereof, to provide for the releases in favor of Releasees and Indemnified Persons as set forth in Paragraphs 4(i) and 5;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in accordance with the terms of the DIP Documents and in such form as the Loan Parties and each of the DIP Secured Parties **and the Prepetition Senior Lender** may agree, and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents that do not materially and adversely affect the Debtors or which do not (A) shorten the maturity of the DIP Loan, (B) increase the principal amount of, or the rate of interest payable on, the DIP Loan, or (C) change any Event of Default, add any covenants or amend the covenants therein, in any such case to be materially more restrictive on the Loan Parties, taken as a whole; <u>provided</u>, <u>however</u>, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and counsel to the Creditors' Committee (if any);

(iii)     the non-refundable payment to the DIP Agent and the DIP Lenders, as the case may be, of all Fees (which fees shall not be subject to any challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise), whether incurred prior to or after the Petition Date, and any amounts due (or that may become due) in respect of the indemnification obligations, and the costs and expenses as may be due from time to time, including, without limitation, invoiced fees of professionals (the payment of which shall be subject to Paragraph 7(e)) retained by any of the Prepetition Senior Lender, the DIP Lenders (and with respect to the Prepetition Senior Lender and the DIP Lenders up to the maximum amount set forth in the Budget) and the DIP Agent, in each case as provided for in the DIP Documents or this Interim Order, without the need to file retention or fee applications or to provide notice to any party, except as otherwise provided herein; provided, however, nothing in this Interim Order shall or shall be deemed to limit the Debtors' liability for all such Fees and other obligations, costs and expenses as provided for in the DIP Documents; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents.

(e)     <u>Payment of Fees of Professionals</u>.  All payments of fees and expenses of professionals retained by the **Prepetition Senior Lender** and any of the DIP Agent and the DIP Lenders which are incurred by such professionals on and after the Petition Date, and authorized under Paragraph 7(d)(iii) shall be made within ten (10) days (the "**Review Period**") after delivery to (which may be by email) the Debtors, the Creditors' Committee (if appointed at such time) and the U.S. Trustee of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications.  The invoices for such Invoiced Fees for law firms and financial advisors (to the extent a

financial advisor is billing by the hour) shall include a summary of the work performed and any expenses sought to be reimbursed. The Debtors, the Creditors' Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading setting forth the specific objections to the Disputed Invoiced Fees. If the objection cannot be consensually resolved, the Debtors shall set it for hearing at the next omnibus hearing date. The Debtors shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees within one (1) business day after expiration of the Review Period; and (ii) any Disputed Invoiced Fees within three (3) business days after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees.

(f)     <u>Valid and Binding Obligations</u>.   Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such agreements and documents shall constitute valid and binding obligations of the Loan Parties, enforceable against the Loan Parties in accordance with the terms of this Interim Order and the DIP Documents.   No obligation, payment, transfer or grant of security by the Loan Parties under the DIP Documents or this Interim Order shall be voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

8.     *DIP Superpriority Claims.*

(a)     <u>Superpriority Claims</u>.   Except to the extent expressly set forth in this Interim Order in respect of the Carve-Out, pursuant to section 364(c)(l) of the Bankruptcy Code, all of the DIP Obligations shall constitute joint and several allowed senior administrative expense claims (the "**DIP Superpriority Claims**") against each Loan Party with priority over any and all administrative

expenses, adequate protection claims and all other claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Claims (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b)      Carve-Out.  For purposes hereof, the "**Carve-Out**" shall mean an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court (including fees and expenses of the noticing and claims agent) and statutory fees payable to the U. S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice or other limits set forth in (iii) below and not included in or limited by the Post-EoD Carve-Out Amount); (ii) fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000, subject to reconsideration prior to entry of the Final Order (without regard to the notice or other limits set forth in (iii) below and not included in or limited by the Post-EoD Carve-Out Amount); and (iii) to the extent ultimately allowed by Final Order of the Court, claims for Professional Fees incurred by persons or firms retained by the Loan Parties or the Creditors' Committee pursuant to sections 327 or 1103 of the Bankruptcy Code (the "**Professional Persons**"), subject to (A) the terms of any interim or final compensation order entered by the Court and (B) any limits to use of DIP Loan proceeds imposed by the Interim Order or Final Order, including the Budget, or other limits on Professional Fees incurred in connection with any investigations of claims and defenses against the Prepetition Secured Parties, as to clauses (A) and (B) that are incurred (x) at any time before delivery by the DIP Agent (at the express prior written direction of the Required Lenders) of a Carve-Out

Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice to the extent that such Professional Fees do not exceed the amounts budgeted therefor in the Budget; and (y) after the occurrence and during the continuance of an Event of Default, and delivery by the DIP Agent at the express written direction of the Required Lenders of a notice (the "**Carve-Out Trigger Notice**") thereof (which may be by email) to the Debtors, the Debtors' bankruptcy counsel, the U. S. Trustee, and counsel for the Creditors' Committee, if any, in an aggregate amount not to exceed $50,000.00 (the amounts set forth in clause (iii) (y) only being the "**Post-EoD Carve-Out Amount**"); provided, that, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii) or (iii) above, on any grounds.

(c)    Carve-Out Priority.    Notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to all liens and claims securing the Prepetition Obligation and the DIP Obligations and the Adequate Protection Obligations (as defined below).

9.    *Maintenance of Letters of Credit.*   To the extent permitted by the DIP Documents, the Loan Parties are authorized to maintain and renew any letters of credit issued under the Existing Agreements on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto.

10.    *DIP Liens.*   As security for the DIP Obligations as authorized hereunder, effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Loan Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted by the relevant Debtors to the DIP Agent, for itself and the benefit of the DIP Secured Parties (all property of the Debtors identified in clauses (a) and (b) below being collectively referred to as the "**DIP Collateral**"),

subject and subordinate only to the Carve-Out (all such liens and security interests granted to the DIP Secured Parties pursuant to this Interim Order, the "**DIP Liens**"):

(a)    <u>First Lien on Unencumbered Property</u>.    Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first-priority senior security interest in and lien upon (i) all tangible and intangible pre- and post-petition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, including, without limitation, any and all unencumbered cash of the Loan Parties (whether maintained with or controlled or possessed by the DIP Agent or otherwise), but excluding equity interests in direct non-U.S. subsidiaries of any Loan Party other than Pledged Foreign Equity (as defined in the DIP Credit Agreement) (such excluded equity interests, the "**Excluded Foreign Equity**"); and (ii) the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (collectively, "**Unencumbered Property**"), in each case other than: (x) the Excluded Foreign Equity, but subject to and effective upon entry of the Final Order including any proceeds of the Excluded Foreign Equity that do not otherwise constitute Excluded Foreign Equity; and (y) subject to and effective upon entry of the Final Order, the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**"), and any proceeds or property recovered pursuant to the Avoidance Actions, whether by judgment, settlement or otherwise (the "**Avoidance Proceeds**");

(b)    <u>Liens Priming the Prepetition Liens</u>.    Pursuant to section 364(d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all of the Prepetition Collateral (whether now existing or hereafter acquired).    The DIP Liens on the Prepetition Collateral shall be senior in all respects to (i) the

Prepetition Liens on the Prepetition Collateral, (ii) the Adequate Protection Liens, and (iii) all other liens encumbering and obligations secured by the Prepetition Collateral on a junior basis to the Prepetition Liens and the Adequate Protection Liens.  The Prepetition Secured Parties shall (x) turn over to the DIP Agent all possessory collateral constituting DIP Collateral held by the Prepetition Secured Parties (the "**Possessory Collateral**") within two (2) business days of entry of this Interim Order, in which case the DIP Agent (y) shall act as bailee on behalf of the Prepetition Secured Parties for purposes of further perfection in the Possessory Collateral, (y) act as bailee on behalf of the DIP Lenders for purposes of further perfection in the Possessory Collateral or (z) enter into such other arrangements with respect to the Possessory Collateral as may be reasonably agreed between the Prepetition Secured Parties and the DIP Agent.

(c)    Liens Senior to Certain Other Liens.  The DIP Liens shall not be: (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, and to the extent permitted by applicable law, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted or deemed to exist in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any liens or security interests granted to secure intercompany obligations among Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 364 of the Bankruptcy Code.

11.    *Protection of DIP Lenders' Rights.*

(a)    No Adverse Action.  So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) under the

DIP Credit Agreement, except as set forth in this Interim Order, the Prepetition Secured Parties (other than the Prepetition Senior Lender) shall: (i) have no right, and shall take no action, to seek stay relief or to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the applicable Prepetition Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Prepetition Collateral except as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date (including, by way of example, due to transfer of agent).

(b)      Possession of DIP Collateral.   To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or have control with respect to any Prepetition Collateral or DIP Collateral, then such Prepetition Secured Creditor shall be deemed to possess or exercise such control solely for the purpose of perfection for the benefit of the DIP Agent and the DIP Lenders.

(c)      Relief from Stay.   The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Agent, the DIP Lenders and the Prepetition Senior Lender to (a) take all actions necessary or desirable to implement the DIP Documents and the terms of this Interim Order and (b) unless the Court orders otherwise during the Remedies Notice Period (as defined below), and subject to the Carve-Out and delivery of a Carve-Out Trigger Notice, (i) immediately upon the occurrence of an Event of Default under (and as defined in) the DIP Credit Agreement, declare (A) the termination, reduction or restriction of any further Commitment (as defined in the DIP Credit Agreement) to the extent any such Commitment remains (subject to the obligation to fund the Post-EoD Carve-Out Amount), (B) all DIP Obligations to

be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (C) the termination of the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations); and (ii) upon the occurrence of an Event of Default and the giving of three (3) days' prior written notice via email to the Debtors, counsel to the Debtors, counsel to the Creditors' Committee, counsel to each of the Prepetition Secured Creditors, and the U.S. Trustee (the "**Remedies Notice Period**") of the occurrence of an Event of Default, which shall run concurrently with any notice required to be provided under the DIP Documents, to exercise all other rights and remedies provided for in the DIP Documents and under applicable law. The Prepetition Senior Lender's and the DIP Secured Parties' delay or failure to exercise rights and remedies under the DIP Documents, the Prepetition Senior Loan Agreement, or this Interim Order shall not constitute a waiver of the DIP Secured Parties' or the Prepetition Senior Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Credit Agreement and the Prepetition Senior Loan Agreement, respectively.

(d) <u>Waiver of Marshaling Doctrine and Equities of Case Exception</u>. Subject only to, and effective upon, entry of the Final Order, (i) in no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or DIP Collateral; and (ii) in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

12. *Payment from Restricted Sources*. Notwithstanding anything else in this Interim Order or in the Final Order, the Carve-Out, the proceeds of the Prepetition Collateral, the Funding Account, or the

DIP Financing (collectively, the "**Restricted Sources**") shall not be available for (a) payment of any fees or expenses incurred by any party in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings, suits, arbitrations, proceedings, applications, motions or other litigation of any type (i) adverse to any of (A) the DIP Secured Parties (whether in such capacity or otherwise), and (B) the Prepetition Secured Parties or any of the affiliates, agents or representatives of the foregoing, or their respective rights and remedies under or in respect of the DIP Facility, the Existing Agreements or any interim or final order with respect to the DIP Facility; (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Existing Agreements, including, in each case, without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; or (iii) attempting to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral in accordance with the DIP Documents and the Interim Order or the Final Order, other than to seek a determination that an Event of Default has not occurred or is not continuing during the Remedies Notice Period; (b) any purpose that is prohibited under the Bankruptcy Code or the Interim Order and the Final Order; (c) making any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, which payment is not provided for in the Budget, without the prior written consent of the Required Lenders and the Prepetition Senior Lender; or (d) after delivery of a Carve-Out Trigger Notice, paying any success, completion, back-end or similar fees; provided that, notwithstanding anything to the contrary herein, the Creditors' Committee may use the Restricted Sources to investigate (i) the claims and liens of the Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured

Parties as long as no more than an aggregate of $25,000.00 of the proceeds of the Restricted Sources may be used for the purposes set forth in the preceding proviso.

13.     *Application of Collateral Proceeds.*  To the extent required by this Interim Order and the DIP Documents, after the expiration of the Remedies Notice Period, the Debtors are hereby authorized and directed to remit to the DIP Agent, for the benefit of the DIP Lenders, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral including but not limited to, all accounts receivable collections, proceeds of sales of intellectual property inventory, equipment, fixed assets and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents, which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions section 362 of the Bankruptcy Code are hereby modified to permit the DIP Secured Parties to retain and apply all collections, remittances, and proceeds of the DIP Collateral subject to and in accordance with this Interim Order and the DIP Documents to the DIP Obligations in accordance with the provisions of the DIP Documents (including the Carve-Out).  After all DIP Obligations shall have indefeasibly been paid in full in cash and the expiration of the Waiting Period, the Debtors are hereby authorized and directed to remit to the Prepetition Secured Parties, one hundred percent (100%) of all collections on, and proceeds of, the Prepetition Collateral and, subject to entry of the Final Order, the proceeds of the Avoidance Actions including but not limited to, all accounts receivable collections, proceeds of sales of intellectual property, inventory, equipment, fixed assets and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Prepetition Secured Parties to retain and apply all collections,

remittances, and proceeds of the Prepetition Collateral and the Avoidance Actions subject to and in accordance with this Interim Order and the Existing Agreements to the Prepetition Secured Obligations in accordance with the provisions of the Existing Agreements (including the Carve-Out).  Until all DIP Obligations have been paid in full in cash and all Commitments have been terminated, the Prepetition Secured Parties shall turn over any and all proceeds of DIP Collateral, Prepetition Collateral or amounts otherwise received on account the DIP Collateral or the Prepetition Collateral to the DIP Agent (for the benefit of the DIP Secured Parties).  Upon closing of any Sale, if the Stalking Horse Bidder is not the Successful Bidder (as defined in the Bid Procedures Order) the proceeds of the Sale shall be paid by the Successful Bidder as follows: (i) first, to pay the outstanding obligations under the DIP Credit Agreement in full; (ii) second, to pay the Expense Reimbursement and Termination Fee (as each defined in the Bid Procedures Order) in full to the extent the Expense Reimbursement and the Termination Fee have not been paid in full prior to the consummation of the Sale in accordance with the terms of the Stalking Horse Agreement (as defined in the Bid Procedures Order); (iii) third, to pay the Prepetition Secured Obligations in full; and (iv) fourth, to the Debtors for distribution by the Debtors at the time of closing of the Sale as provided in the Successful Bidder's asset purchase agreement.

14.    *Limitation on Charging Expenses Against Collateral.*  Subject only to, and effective upon, entry of the Final Order, except to the extent of the Carve-Out, and funding of the Budget (subject to Permitted Variances), no costs or expenses of administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent (acting at the prior written consent of the Required Lenders) or the Prepetition Secured Parties, as the case may be, and no such consent shall be implied

from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Prepetition Collateral or the DIP Collateral, as applicable, under section 506(c) of the Bankruptcy Code or otherwise.

15.      *Intercompany Loans.*  The proceeds from the DIP Loans shall not be loaned or advanced to, or invested in (in each case, directly or indirectly), any entity that is not a debtor subsidiary of a Debtor without the prior written consent of the Required Lenders and the Prepetition Senior Lender. The intercompany note shall be pledged to the DIP Agent, for the benefit of the DIP Lenders, to secure the DIP Obligations; and all intercompany liens of the Debtors, if any, will be subordinated to the liens securing the DIP Facility on terms satisfactory to the DIP Agent, the Required Lenders and the Prepetition Senior Lender.

16.      *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of this Interim Order or Final Order shall be received free and clear of any claim, charge, assessment or other liability.

17.      *Cash Collateral.*  The Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order, to collect, deposit and retain all Cash Collateral in the Funding Account in accordance with the DIP Credit Agreement.  Proceeds of all Collateral received by the Debtors in the ordinary course of business shall be deposited into the Funding Account and remain subject to the terms and conditions of and otherwise in accordance with the DIP Loan Documents, including, without limitation, the Budget (subject to Permitted Variances).

18.      *Adequate Protection.*  The consent of the Prepetition Senior Lender to the priming of the Prepetition Senior Loan Liens by the DIP Liens is limited to the DIP Facility presently before this Court

and authorized by this Interim Order (as amended supplemented or otherwise modified in accordance with the terms thereof and hereof), and shall not be deemed to, extend to any other post-petition financing with any other party (other than any permitted successors and assigns of any of the DIP Secured Parties).  Furthermore, the consent of the Prepetition Senior Lender to the priming of the Prepetition Senior Loan Liens by the DIP Liens as provided in this Order does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Senior Lender that its interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise.  Nothing in this Order, including any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Secured Parties are or will be adequately protected priming of the Prepetition Senior Loan Liens.

(a)    Adequate Protection Obligations.  Until the indefeasible repayment in full in cash of the Prepetition Senior Loan Obligations, as adequate protection for the interests of the Prepetition Senior Lender in the Prepetition Collateral, the Prepetition Senior Lender is hereby granted the following (collectively, "**Adequate Protection**"):

(i)    Adequate Protection Liens.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Senior Lender is hereby granted by the Loan Parties a continuing valid, binding, enforceable and perfected, lien and security interest in and on all of the DIP Collateral, including Avoidance Actions (subject to the entry of a Final Order) and any proceeds thereof (the "**Adequate Protection Liens**"). The Adequate Protection Liens shall be subordinate only to (1) the Carve-Out and (2) the DIP Liens.  The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any successor cases.  Except as described

above, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or *pari passu* with the Adequate Protection Liens in the Chapter 11 Cases or any successor cases without the prior written consent of the Prepetition Senior Lender (which consent may be withheld in their respective sole discretion).

(ii)     Adequate Protection Claims.     Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Senior Lender shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Claims**") against the Loan Parties and their estates.  Upon entry of the Final Order, the Adequate Protection Claims will also be payable from any and all proceeds and recoveries from Avoidance Actions. The Adequate Protection Claims shall be subordinate only to (1) the Carve-Out, (2) the DIP Liens, and (3) the DIP Superpriority Claims.  Except as described above, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in these Chapter 11 Cases or any Successor Cases, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or *pari passu* with, the Adequate Protection Claims.

(iii)     Fees.  As further adequate protection, and without limiting any rights of the Prepetition Senior Lender under section 506(b) of the Bankruptcy Code, which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Senior Lender to the entry of this Interim Order and:

> (a)     the Prepetition Senior Lender shall be entitled to, and the Adequate Protection (including the Adequate Protection Liens and Adequate Protection Claims) shall be deemed to include, any and all reasonable out-of-pocket fees, costs, and expenses, including the reasonable fees and expenses of the Prepetition Senior Lender's attorneys, financial advisors, accountants and other professional advisors, incurred in connection with

the negotiation, documentation, execution, approval of, or exercise of remedies in connection with the Prepetition Senior Loan Agreement and the DIP Facility and all advances under and all actions taken with respect to the foregoing.  Any and all such fees, costs and expenses shall be due and payable pursuant to Paragraph 7(e) above.

(b)      All unpaid fees, costs, expenses, charges and indemnities that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee or the Creditors' Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Interim Order.  Any and all fees, commissions, costs and expenses paid or incurred prior to the Petition Date by any Debtor to the Prepetition Senior Lender are hereby approved in full, except in the event that following a challenge brought pursuant to Paragraph 24, the Prepetition Senior Loan Obligations or the Prepetition Senior Loan Liens are determined by final order of a court of competent jurisdiction to be invalid.

Nothing herein shall constitute a waiver of any rights the Prepetition Senior Lender may have under section 506(b) of the Bankruptcy Code to include fees, costs and other charges in the Prepetition Secured Obligations.

19.     <u>Adequate Protection Obligations</u>.    The Adequate Protection Liens and Adequate Protection Claims shall secure the payment of the Prepetition Senior Loan Obligations in an amount equal to any diminution in the value of the respective interests of the Prepetition Senior Lender in the Prepetition Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Obligations**") including any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Collateral; (ii) the imposition of the DIP Liens; (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral or otherwise.  The Adequate Protection Obligations shall also be deemed to include the other obligations arising on account of the Adequate Protection set forth herein.

20.     *Reservation of Rights of Prepetition Secured Parties.*    Notwithstanding any other provision hereof, the relief granted hereby is without prejudice to the right of the Prepetition Secured

Parties to seek adequate protection of their interests.  The Prepetition Secured Parties acknowledge that the DIP Liens securing the DIP Loan are senior to the Prepetition Liens securing the Prepetition Secured Obligations.  Except as expressly provided herein, nothing contained in this Interim Order shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Secured Parties. The consent of the Prepetition Secured Parties to the priming of the Prepetition Liens by the DIP Liens and the Carve-Out is limited to the DIP Loans and the Carve-Out and does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Secured Parties that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Interim Order.

21.    *Sale Proceeds Limitations*.  Except in accordance with the Bid Procedures Order and the DIP Documents, the Debtors shall not sell, lease, transfer or otherwise dispose of their interest in the DIP Collateral or the Prepetition Collateral, or seek authority of this Court to do any of the foregoing, without the prior written consent of the Prepetition Senior Lender and the DIP Secured Parties.  In the event of any sale, lease, transfer, license, or other disposition of property of the Debtors that constitutes DIP Collateral or Prepetition Collateral outside the ordinary course of business (to the extent permitted by this Interim Order, the DIP Documents and the Bidding Procedures Order), the Debtors are authorized and directed, without further notice or order of this Court, subject to the rights and reservations set forth in paragraph 24 of this Interim Order, to promptly pay 100% of the net proceeds (including cash or other forms of consideration) resulting therefrom to the DIP Agent for the benefit of the DIP Lenders and after the payment in full of all DIP Obligations, the Expense Reimbursement, and the Termination Fee, to the Prepetition Secured Parties.  Except to the extent expressly set forth in this Interim Order, the Prepetition Secured Parties shall not receive or retain any payments, property or other

amounts pursuant to this Paragraph 21 unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.

22.    *Perfection of the DIP Liens.*

(a)    <u>Deemed Perfection Without Further Action</u>.  Whether or not the DIP Agent, on behalf of the DIP Secured Parties shall, in its discretion or at the prior written direction of the Required Lenders, choose to file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.

(b)    <u>Authority to Take Action to Further Provide Notice of Automatically Perfected Liens</u>.  The DIP Agent and the DIP Lenders are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and further to provide notice of the perfection of the liens and security interests granted to them hereunder and automatically perfected hereby. Upon the request of the DIP Agent, the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, preserve and enforce the DIP Liens. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(c)    <u>Perfection by Certified Copy of Order</u>.  A certified copy of this Interim Order may, in the discretion of the DIP Agent, or at the express written direction of any of the Required Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all applicable filing and recording offices are hereby authorized to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this Paragraph 22.

(d)    <u>Restrictions on DIP Liens</u>.  Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any such provision shall have no force and effect with respect to the granting of the DIP Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Secured Parties or the Prepetition Secured Parties in accordance with the terms of the DIP Documents or this Interim Order.

23.    *Preservation of Rights Granted Under this Interim Order.*

(a)    <u>No Superior or *Pari Passu* Liens</u>.  Other than the Carve-Out, no claim or lien having a priority superior to or pari passu with those granted by this Interim Order to the DIP Agent and the DIP Lenders shall be granted or allowed while any of the DIP Obligations remain outstanding except, subject to the service on each such party of notice of the Final Hearing (as defined below), together with a copy of the proposed Final Order, in accordance with Paragraph 35 hereof, and the

entry of the Final Order with respect to any post-Petition Date tax liens or other liens in favor of governmental entities which have priority under applicable non-bankruptcy law; and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364( d) of the Bankruptcy Code or otherwise.

(b)     <u>Events of Default</u>.  Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitments have been terminated, it shall constitute an Event of Default under the DIP Facility if any of the Loan Parties, without the prior written consent of the Prepetition Senior Lender and the Required Lenders (as defined in the DIP Credit Agreement) or the DIP Agent, seeks, proposes or supports, or if there is entered or confirmed (in each case, as applicable): (i) any modifications, amendments or extensions of this Interim Order, and no such consent shall be implied by any action, inaction or acquiescence by any party; (ii) an order converting or dismissing any of these Chapter 11 Cases; (iii) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; (iv) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); or (v) the sale of all or substantially all of the assets of the Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent obligations for which no claim has been asserted by the DIP Agent or DIP Lenders) upon the consummation thereof.

(c)     <u>Survival Upon Reversal</u>.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, not affect (i) the validity, priority or

enforceability of any DIP Obligations or the Prepetition Secured Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Prepetition Liens, the Adequate Protection Liens, or the Adequate protection Claims.  Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations incurred by the Debtors to the DIP Secured Parties prior to the effective date of such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents.

(d)    Survival.  Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Claims, and all other rights and remedies of the DIP Secured Parties granted by this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of the Sale Order (as defined in the Bid Procedures Order) or the closing of the Sale, (ii) the entry of an order converting any of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, dismissing any of the Cases, or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 114l(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding Chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims and any other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the DIP Secured

Parties and the Prepetition Senior Lender granted by this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash.

24.    *Effect of Debtors' Stipulations on Third Parties.*

(a)    <u>Binding on Debtors</u>.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph 4 of this Interim Order, shall be binding upon the Debtors in all circumstances and for all purposes.

(b)    <u>Binding on Third Parties</u>.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph 4 of this Interim Order, shall be binding upon their estates and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless the criteria under subparagraphs 24(g)(i), (iii), and (iii) below are satisfied.

(c)    <u>Challenge Period</u>.  Such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so, a "**Challenge Party**"), in each case, with requisite standing granted by the Court (which motion for such standing may be filed concurrently with the adversary proceeding or contested matter), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, inter alia, in Paragraph 24(g), by no later than a date that is, consistent with Local Rule 4001-2(a)(i)(B), (x) 75 days after entry of this Interim Order for all parties in interest other than the Creditors' Committee, and 60 days after appointment of the Creditors' Committee for such Creditors' Committee; and (y) any such later date as has been ordered by the Court for good cause shown upon a motion filed

and served within any applicable period of time set forth in this Paragraph 24(c) (the "**Challenge Period**"); provided, however, that if the Creditors' Committee files a motion seeking standing on or prior to 60 days after its appointment, the Challenge Period for the Creditors' Committee shall be tolled through the date that is three (3) business days after this Court enters a ruling on such motion solely with respect to any Challenge specifically identified in such motion (including any proposed complaint or pleading attached thereto); provided, further, that if any of the Chapter 11 Cases convert to a chapter 7 case, or if a chapter 11 trustee is appointed, prior to the end of the Challenge Period, any such trustee shall have the benefit of any remaining portion of the Challenge Period.

(d)     Challenge Proceeding.    Such adversary proceeding or contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "**Challenge Proceeding**") against any Prepetition Secured Parties, or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Existing Agreements, the Prepetition Obligations, the Prepetition Liens and the Prepetition Collateral.

(e)     Final Non-Appealable Order.    A final non-appealable order is entered in favor of the plaintiff in any such Challenge Proceeding; provided that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived,

released and barred; and provided further, that nothing contained herein shall preclude or otherwise limit the rights of the Creditors' Committee or any party to seek to intervene, or to appear and be heard under 11 U.S.C. § 1109(b ).

        (f)    <u>Agreement to Not Assert a Challenge</u>.  Notwithstanding the foregoing, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties hereby agree not to (and hereby waive any right to) take any action to contest or challenge (or assist or support any other person in contesting or challenging), directly or indirectly, the extent, validity, priority, enforceability or perfection of the Prepetition Secured Obligations or the Prepetition Liens.

        (g)    <u>Failure to File Challenge Proceeding</u>.  If no Challenge Proceeding is timely and properly filed during the Challenge Period with respect to the Prepetition Secured Obligations or Liens: (i) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order relating thereto, including, without limitation, those contained in Paragraph 4 of this Interim Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee; (ii) the obligations of the Prepetition Obligors under the Existing Agreements shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases, and any subsequent chapter 7 case(s); (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; (iv) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates; and (v) any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other

party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties arising out of or relating to the Existing Agreements shall be deemed forever waived, released and barred. If any such Challenge Proceeding is timely filed during the Challenge Period, the applicable stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Existing Agreements, the Prepetition Obligations or the Prepetition Liens; and any motion seeking standing shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceedings, and any claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released and barred.

25.    *Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

26.    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases,

the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; provided, that, except to the extent expressly set forth in this Interim Order, the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the  DIP Loans, as applicable, or extend any financing to any Chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

27.    *Limitation of Liability.*  Subject to entry of the Final Order, in determining to make any loan under the DIP Credit Agreement, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the DIP Documents or the Existing Agreements, the DIP Secured Parties, and the  Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, subject to entry of the Final Order, nothing in this Interim Order, the DIP Documents or the Existing Agreements shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties, or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

28.    *Insurance.*  To the extent any Prepetition Lender  is listed as loss payee or additional insured under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee or

additional insured, as applicable, under the Debtors' insurance policies and shall act in that capacity and subject to the terms of the DIP Documents, distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations, and <u>second</u>, to the payment of the Prepetition Obligations

29.     *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 400l(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

30.     *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

31.     *Credit Bidding.* Subject to the express written direction of the Required Lenders (as defined in the DIP Credit Agreement) and the terms of the DIP Documents, and subject to the provisions of section 363(k) of the Bankruptcy Code, the DIP Lenders, through either the DIP Agent or a special purpose entity established by the Required Lenders to hold, among other assets, the DIP Obligations and the DIP Liens, shall have the right to credit bid some or all of the DIP Obligations in any sale of the DIP Collateral (or any part thereof), including as contemplated by the motion seeking approval of bidding procedures for a sale of all or substantially all of the Debtors' assets (the "**Sale**") filed on the Petition Date, without the need for further Court order authorizing the same and whether any such Sale is effectuated through section 363(k) or l129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

32.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

33.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

34.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and any and all of the documents approved hereunder, including, without limitation, the DIP Documents and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

35.     *Final Hearing*. The Final Hearing is scheduled for December __, 2016 at _____ (Prevailing Eastern Time) before this Court.

36.     *Objections*.  Any party in interest objection to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be filed and served upon (a) proposed counsel for the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020 Attn: Thomas R. Califano and Jamila Justine Willis and 1201 North Market Street, Suite 2100, Wilmington, DE 19801, Attn: Stuart Brown and Maris Kandestin; (b) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 (Attn: Richard Schepacarter, Esq.); (c) counsel to the Prepetition Senior Lender, Levy, Small & Lallas, 815 Moraga Drive, Los Angeles, CA 90049 (Attn: Leo D. Plotkin) and Chipman Brown Cicero & Cole, LLP., Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: William E. Chipman, Jr.); (d) counsel to Horizon Funding Trust 2013-1, LLC as subordinated lender, K&L Gates LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111-2950, Attn: Charles A. Dale III and K&L Gates LLP, 4350 Lassiter at North Hills Avenue, Suite 300, Raleigh, NC 27609 Attn: A. Lee Hogewood III; (e) the Bridge Loan Lenders (f) counsel to the DIP Agent, Kaye Scholer LLP, 70 W.

Madison Street, Suite 4200, Chicago, IL 60614 (Attn: Michael D. Messersmith and Seth J. Kleinman);

(e) counsel to the DIP Lenders Allen & Overy LLP, 1221 Avenue of the Americas, New York, New

York 10020 (Attn: Daniel J. Guyder); (f) co-counsel to the DIP Lenders and counsel to the DIP Agent,

Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19801 (Attn: Curtis

Miller); (g) counsel to the Creditors' Committee, if such committee is appointed; and (g) all other parties

entitled to notice pursuant to Local Rule 9013-1(m), in each case to allow actual receipt by the foregoing

no later than _____, 2016 at 4:00 p.m. (Prevailing Eastern Time).  The Debtors shall promptly serve

copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including,

without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights

under sections 506(c) and 552(b) of the Bankruptcy Code and liens on Avoidance Actions) to the parties

having been given notice of the Interim Hearing, to all state and local taxing authorities in the states in

which the Debtors do business, any federal or state regulatory authorities governing the Debtors'

industry, and to any party that has filed a request for notices with this Court and to the Creditors'

Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall

have been appointed.


Dated: Wilmington, Delaware
       November __, 2016


_____
THE HONORABLE
UNITED STATES BANKRUPTCY JUDGE