## **<u>EXHIBIT B</u>**

## **Proposed Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>XTERA COMMUNICATIONS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-12577 (    )<br><br>(Jointly Administered)<br><br>**Re: D.I. ____** |

**ORDER (I)(A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING RELATED
AUCTIONS AND A HEARING TO CONSIDER APPROVAL OF SALE; (C)
APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF;  (E) APPROVING BID
PROTECTIONS; AND (F) GRANTING RELATED RELIEF; AND (II)(A)
AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
AND (C) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "Motion")[2] of the above-

captioned debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to

sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (as

amended from time to time, the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") (i)(a) approving procedures in connection with the sale

---

[1]   The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax
      identification number, are as follows: Xtera Communications, Inc. (4611); Xtera Communications, Ltd. (4611);
      Xtera Communications Canada, Ltd. (9560); Xtera Communications Hong Kong Ltd. (4611); PMX Holdings,
      Ltd (4611); Azea Networks, Inc. (7821); Neovus, Inc. (2940); and Xtera Asia Holdings, LLC (4611).  The
      mailing address for the Debtors, solely for purposes of notices and communications, is 500 W. Bethany Drive
      Suite 100 Allen, TX 750133.

of the Debtors' Assets; (b) scheduling an auction (to the extent necessary) and a hearing to consider approval of sale; (c) approving procedures related to the assumption of certain executory contracts and unexpired leases; (d) approving the form and manner of notice thereof; (e) approving bid protections; and (f) granting related relief; and (ii)(a) authorizing the sale of the Debtors' Assets pursuant to the successful bidder's asset purchase agreement free and clear of liens, claims, encumbrances, and other interests; (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases; and (c) granting related relief; the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion as it relates to the approval of the Bidding Procedures is in the best interests of the Debtors, their estates and its creditors; and good and sufficient cause having been shown;

AND IT IS FURTHER FOUND AND DETERMINED THAT:

A.     The Debtors have demonstrated a compelling and sound business justification for this Court to grant the relief requested in the Motion relating solely to the approval of the Bidding Procedures, as set forth herein, including, without limitation, (i) approval of the Bidding Procedures, (ii) the approval of the Break Up Fee and Expense Reimbursement, (iii) authorization to enter into the Stalking Horse Agreement with the Stalking Horse Purchaser

---

2    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

subject to (a) higher or otherwise better offers, (b) for cause under section 363(k) of the Bankruptcy Code, (c) approval of the terms of the sale set forth in the Stalking Horse Agreement at the Sale Hearing, under the circumstances described herein and the Motion, and (d) approval of the Assignment and Assumption Procedures, under the circumstances described herein and the Motion.

B.    The Debtors' proposed notice of the Bidding Procedures, the Assumption and Assignment Procedures, the Auction and the hearing to approve the Sale of the Debtors' Assets (the "Sale Hearing") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

C.    The Bidding Procedures substantially in the form attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Assets.

D.    The Break Up Fee and Expense Reimbursement are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder, are: (i) actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Purchaser; reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made and the efforts that have been made and will be expended by the Stalking Horse Purchaser; and (iv) necessary to induce the Stalking Horse Purchaser to pursue the Sale and be bound by the Stalking Horse Agreement.

E.    The Sale Notice, substantially in the form attached hereto as Exhibit 3, is appropriate and reasonably calculated to provide all interested parties with timely and proper

notice of the sales of the Assets, the Bidding Procedures, the Auction and the Sale Hearing, and no other or further such notice is required.

F.       The Cure Notice, substantially in the form attached hereto as <u>Exhibit 4</u>, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Assumed Executory Contracts and the related Cure Amount, and no other or further such notice is required.

G.       The Initial Overbid and the Overbid Increments (as set forth in the Bidding Procedures) are fair, reasonable and appropriate and provide a benefit to the Debtors' estates and creditors.

H.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

I.       To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY FOUND, CONCLUDED, AND ORDERED THAT:

1.       The Motion is GRANTED to the extent set forth herein.

2.       All objections to the relief requested in the Motion as it relates to the approval of the Bidding Procedures that have not been withdrawn, waived, or settled are overruled.

3.       The Bidding Procedures attached hereto as <u>Exhibit 1</u> are APPROVED.

4.       H.I.G. Europe – Neptune, Ltd. is hereby approved to be and designated as the Stalking Horse Purchaser.

**Auction, Break Up Fee, Bid Procedures, and Related Relief**

5.      Subject to (a) the Bidding Procedures (b) higher or otherwise better offers, (c) for cause under section 363(k) of the Bankruptcy Code, and (d) approval of the sale at the Sale Hearing, the Debtors' entry into the Stalking Horse Agreement (including any amendments thereto) attached as *Exhibit A*[3] to the Motion, is hereby approved, subject to final approval of the terms and conditions of the Stalking Horse Agreement, or any sale agreement submitted by Successful Bidder at the Sale Hearing with respect to the Assets.

6.      Should the Stalking Horse Purchaser not be the Successful Bidder as defined in the Bid Procedures and provided the Stalking Horse Purchaser is otherwise entitled under the Stalking Horse Agreement to payment of the Break Up Fee, the Trustee is hereby authorized to pay the Break Up Fee to the Stalking Horse Purchaser as provided in the Stalking Horse Agreement.  As provided in the Bid Procedures, to be treated as a Qualified Bid the bid must meet the requirements of an Initial Overbid, which includes, *inter allia*, cash consideration in an amount equal to the Break Up Fee and Expense Reimbursement.  The obligation of the Trustee to pay the Break Up Fee and Expense Reimbursement shall constitute an allowed administrative expense claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code that is not subordinate to and has priority over any and all administrative expenses of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code that shall be payable at the closing of an Alternative Transaction (as defined in the Stalking Horse Purchase Agreement).

7.      The Bid Deadline shall be [_____], 2016 at 5:00 p.m. (prevailing Eastern Time).

---

[3]    For the convenience of parties in interest, a chart listing important dates set forth in this Order is attached hereto as Exhibit 2.

8.      The Stalking Horse Purchaser and other secured creditors holding allowed secured claims against the Debtors shall have the right, subject to the provisions of the Bankruptcy Code, applicable law, and any agreements between secured creditors, to credit bid such claims.  Any credit bid must include a cash component (or otherwise provide cash) sufficient to pay all liens senior to the liens of the party making the credit bid on the collateral that is subject to the credit bid unless such senior lienholder(s) shall otherwise consent in writing prior to or at the Auction.

9.      Any person or entity (a "Pre-Petition Licensee") that is party to a pre-petition contract (the "Pre-Petition Licenses") with the Xtera Communications, Inc. ("Xtera Inc.") or any of the Seller Affiliates (as defined in the Stalking Horse Agreement) pursuant to which such Xtera Inc. or the Seller Affiliates granted a license under its intellectual property that wishes to retain any of such Pre-Petition Licensee's rights under section 365(n)(1)(B) of the Bankruptcy Code must file in this case a notice of election to retain such rights (a "Notice of Election") on or prior to _____, 2016  (the "Notice of Election Deadline") and serve such notice on the Debtors and the Stalking Horse Bidder.  A Pre-Petition Licensee that fails to timely file a Notice of Election with respect to a Pre-Petition License will be irrevocably deemed to have elected to treat each such Pre-Petition License as terminated under section 365(n)(1)(A) of the Bankruptcy Code.

10.     The *Notice Of Deadline To Make Election To Retain Rights Under Section 365(n) of the Bankruptcy Code With Respect To Agreements Pursuant To Which Xtera Communications, Inc. Leased Rights To Intellectual Property*, substantially in the form attached hereto as Exhibit 5, is approved in all respects.  The Debtors shall serve, via first class mail, such notice, not later than three (3) business days after the entry of this Order on all known creditors

and all other parties whose rights the Debtors reasonably believe may be affected by failure to file a timely Notice of Election.

11.     The Auction, if necessary, shall be held on [_____], 2016 at 10:00 a.m. (prevailing Eastern Time) at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, 27th Floor, New York, New York 10020, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction.  The Auction may be adjourned by the Debtors, in consultation with Wilmington Trust, N.A., as administrative and collateral agent under the DIP Facility (the "DIP Agent") and the Creditors' Committee by announcement at the Auction or in open Court without any further notice required, and in such an event, the Debtors shall provide reasonable notice to Qualified Bidders of the time and place for the resumption of the Auction.

12.     At the Auction each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and the Auction shall be conducted openly and transcribed.

13.     Only a Qualified Bidder who has submitted a Qualified Bid by the Bid Deadline shall be eligible to participate at the Auction; provided, however, (i) that the Stalking Horse Purchaser is hereby deemed a Qualified Bidder, and the Stalking Horse Agreement is deemed a Qualified Bid, and (ii) that any party in interest may attend (but not participate in) the Auction if they provide the Debtors with written notice of their intention to attend the Auction on or before the Bid Deadline.  Such written notice must be sent to proposed counsel for the Debtors via electronic mail, to Jamila Willis, Esq., at jamila.willis@dlapiper.com.

14.     The Debtors, in consultation with the Creditors' Committee and the DIP Agent, shall determine which offer is the highest and otherwise best offer for the Assets, giving effect to

any liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors.

### Notice of Sale

15. The Sale Hearing, at which the Court shall consider the Debtors' request in the Motion to approve the Stalking Horse Agreement, or any sale agreement submitted by the Successful Bidder, shall be held on [_____],2016 at [__:__] [_].m. (prevailing Eastern Time) before this Court, the U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801.  Any objections to the Sales shall be filed and served so as to be received no later than [_____], 2016 at 4:00 p.m. (prevailing Eastern Time) by: (i) proposed counsel to the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020-1104, Attn: Thomas R. Califano, Esq. (Thomas.Califano@dlapiper.com); and DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: Stuart M. Brown, Esq. (Stuart.Brown@dlapiper.com), (ii) financial advisors to the Debtors, Cowen and Company, 599 Lexington Avenue, 27th Floor, New York, New York 10022 Attn: Lorie R. Beers; (iii) counsel to the Postpetition Lender, Allen & Overy LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Daniel Guyder, Esq. (daniel.guyder@allenovery.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Curtis S. Miller (cmiller@MNAT.com); (iv) counsel to the DIP Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL 60614, Attn: Michael D. Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayescholer.com); and (v) counsel to the Prepetition Senior Lender, Levy, Small & Lallas, 815 Moraga Drive, Los Angeles, CA 90049, Attn: Leo D. Plotkin

(mailto:lplotkin@lsl-la.com) and  Chipman Brown Cicero & Cole, LLP., Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com) (collectively, the "Notice Parties").

16.    The Sale Hearing may be adjourned from time to time in consultation with the DIP Agent and the Creditors' Committee, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

17.    The following forms of notice are approved (a) Notice of Sale Procedures, Auction Date and Sale Hearing, in the form substantially similar to that attached hereto as Exhibit 3 (the "Sale Notice") and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned (the "Cure Notice"), in the form substantially similar to that attached hereto as Exhibit 4.

18.    The Debtors shall, within two (2) business days after the entry of this Order, serve this Order and the Sale Notice by first class mail, postage prepaid on: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002; (d) counsel to the Stalking Horse Purchaser; (e) the United States Attorney's Office and any Attorneys General for the District of Delaware, and Texas and any other states where the Debtors conduct business; (f) the Internal Revenue Service and other applicable taxing authorities; (g) all known parties that may be asserting a lien or interest against any of the Assets; (h) counterparties to executory contracts and unexpired leases; and (i) all Potential Bidders (collectively with the parties specified in this paragraph, the "Sale Notice Parties").

19.    Within five (5) business days of the entry of this Order, the Debtors will publish a notice, substantially similar to the form of the Sale Notice (the "Publication Notice"), in *The New York Times (National Edition)* and/or such other publication(s) as the Debtors and their advisors deem appropriate.

**Assumption and Assignment Procedures**

20.    The Debtors shall serve the Cure Notice upon each counterparty to the Assumed Executory Contracts or their counsel (if known), and shall file the Cure Notice, by no later than the date that is five (5) business days after entry of this Order.  The Cure Notice shall state the date, time, and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts").

21.    If any counterparty to an Assumed Executory Contract objects for any reason to the assumption and assignment of an Assumed Executory Contract (an "Assumption Objection"), including with respect to the ability of the Stalking Horse Purchaser or any other purchaser of the Assets (a "Purchaser"), as applicable, to provide adequate assurance of future performance under the Assumed Executory Contract, such counterparty must file and serve such Assumption Objection so as to be received by the Notice Parties by no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the date of service of the Cure Notice (the "Assumption Objection Deadline"); provided, however, that any counterparty may raise at the Sale Hearing an objection to the assumption and assignment of the Assumed Executory Contract solely with respect to the ability of a Successful Bidder other than the

Stalking Horse Purchaser to provide adequate assurance of future performance under the Assumed Executory Contract. The Court will make any and all determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

22.    If a Contract or Lease is assumed and assigned pursuant to Court order, then except for Disputed Cure Amounts (as defined herein), the Assumed Executory Contract counterparty shall receive no later than three (3) business days following the closing of the Sale, the Cure Amount, if any, as set forth in the Cure Notice, unless otherwise agreed. To the extent the Assumed Executory Contract counterparty wishes to object to the Cure Amount, if any, set forth in the Cure Notice, its Assumption Objection must set forth with specificity each and every asserted default in any executory contract or unexpired lease and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtors in the Cure Notice.

23.    In the event that the Debtors and the non-debtors party cannot resolve the Cure Amount, the Debtors shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties, unless the Successful Bidder (whether the Stalking Horse Purchaser or other person) instead elects to reject the related contract or lease. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing. The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Assumed Executory Contract or the sale of the Assets to the Successful Bidder. Any counterparty to an Assumed Executory Contract that fails to timely file and serve

an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice.

24.    Except to the extent otherwise provided in the Successful Bidder's Purchase Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to section 365(k) of the Bankruptcy Code.

**Miscellaneous**

25.    Notwithstanding anything to the contrary contained in this Order or otherwise: (i) the right of the DIP Agent (on behalf the DIP Lenders) to consent to the sale of any portion of its collateral, including, without limitation, any Assets, on terms and conditions acceptable to Agent and the DIP Lenders, shall be expressly reserved and not modified, waived or impaired in any way by this Order; (ii) if the Successful Bidder is not the Stalking Horse Purchaser all cash proceeds generated from the sale of any Assets to the Successful Bidder shall be paid to DIP Agent upon the closing of such sale for application against the obligations owing by the Debtor to DIP Agent and the DIP Lenders and until such time as all such obligations have been fully repaid and satisfied in full in accordance with the terms and conditions of the interim or final Order of this Court (such Order, the "DIP Order") approving the DIP Facility and the DIP Documents (as defined in the DIP Order); and (iii) the Debtor shall consult with DIP Agent and the Committee prior to employing any additional procedures rules at any Auction.

26.    Notwithstanding anything to the contrary contained in this Order or otherwise, nothing in this Order shall amend, modify, or impair any provision of the DIP Order, or the rights of Debtor, the DIP Agent of the DIP Lenders thereunder.

27.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibit referenced herein or with the Motion, the provisions of this Order shall control.

28.     Notwithstanding anything to the contrary in the Motion or this Order, the relief granted herein and any payment authorized by, and any authorizations contained herein, are and shall be subject to the terms and requirements of any orders authorizing use of cash collateral or debtor-in-possession financing approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use).

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion, as set forth herein.

30.     To the extent any of the deadlines set forth in the Bid Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Order shall govern.

31.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

32.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.


Dated: _____, 2016
        Wilmington, Delaware                    _____
                                                THE HON.
                                                UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the sale of substantially all of the assets (the "Assets" ) of Xtera Communications, Inc. ("Xtera Inc.") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in connection with the chapter 11 cases of the Debtors pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

Xtera Inc. (on behalf of itself and the Seller Affiliates identified herein) entered into a stalking horse asset purchase agreement with H.I.G. Europe - Neptune, Ltd. (the "Stalking Horse Purchaser"), pursuant to which the Stalking Horse Purchaser shall acquire the Assets from Xtera Inc. and the Seller Affiliates on the terms and conditions specified therein (together with the schedules, exhibits, and related documents thereto, the "Stalking Horse Agreement"). The sale transaction pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Stalking Horse Agreement or the bidding procedures order (the "Bidding Procedures") entered by the Bankruptcy Court approving, among other things, these Bidding Procedures, as applicable.

## I.     ASSETS TO BE SOLD

The Debtors seek to complete a sale of the Assets (the "Sale"). The Stalking Horse Agreement will serve as the "stalking-horse" bid for the Assets.

## II.    THE BID PROCEDURES

In order to ensure that the Debtors receive the maximum value for the Assets, they intend to hold a sale process for the Assets pursuant to the procedures and on the timeline proposed herein.

### A.     Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person, other than the Stalking Horse Bidder, who wishes to participate in the bidding process (a "Potential Bidder") must deliver the following to the Notice Parties (as defined below):

          (i)     a written disclosure of the identity of each entity that will be bidding for the Assets, or otherwise participating in connection with such bid; and

          (ii)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors to a Potential Bidder) in form and substance satisfactory to the Debtors, which shall inure to the benefit of any purchaser of the Assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

A Potential Bidder that delivers the documents and information described above and that the Debtors determine in their reasonable business judgment, after consultation with their advisors, the Creditors' Committee and its advisors, the DIP Agent and the DIP Lenders and its advisors, is likely (based on availability of financing, experience, and other considerations) to be able to consummate the sale, will be deemed a "Qualified Bidder." The Debtors will limit access to due diligence to those parties it believes, in the exercise of its reasonable judgment, are pursuing the transaction in good faith.

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Debtors will determine, after consultation with the Creditors' Committee, the DIP Agent and the DIP Lenders if such Potential Bidder is a Qualified Bidder, and will notify the Potential Bidder if such a determination is made.

### B.      Due Diligence

The Debtors will afford any Qualified Bidder such due diligence access or additional information as the Debtors, in consultation with their advisors, deem appropriate, in their reasonable discretion. The due diligence period shall extend through and include the date of the Auction (as defined below); provided, however, that any Qualified Bid (as defined below) submitted shall be irrevocable until the selection of the Successful Bidder.

### C.      Provisions Governing Qualified Bids

A bid submitted by any party other than the Stalking Horse Purchaser will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "Qualified Bid"):

a)  it states that the applicable Qualified Bidder offers to purchase any or all of the Assets;

b)  it includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder (defined below), provided that if such bidder is selected as (i) the Successful Bidder, then the offer shall remain irrevocable until the earlier of (A) the date the Sale Order is entered if the sale transaction with such Successful Bidder is denied and (B) the date that is thirty (30) days after the Sale Hearing, or (ii) the Back-Up Bidder, then the offer shall remain irrevocable until the earlier of (A) the date of closing of the transaction with the Successful Bidder and (B) the date that is sixty (60) days after the Sale Hearing;[1]

c)  confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

---

[1]  Notwithstanding the foregoing, if the Stalking Horse Purchaser is not the prevailing bidder at the conclusion of the Auction, the Stalking Horse Purchaser, may, at its sole and absolute discretion, keep its bid to consummate the transactions contemplated by the Stalking Horse Agreement (as the same may be improved upon in the Auction) open and irrevocable until entry of an order approving the bid of a prevailing bidder

d) it sets forth each governmental, regulatory, and other third-party approval required for the Qualified Bidder to consummate the transaction, including in connection with the assignment of any executory contracts and unexpired leases, and the time period within which the Qualified Bidder expects to receive such approvals;

e) it includes a duly authorized and executed copy of a purchase or agreement (a "Purchase Agreement"), including the purchase price for the Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, together with copies marked ("Marked Agreement") to show any amendments and modifications to the Stalking Horse Agreement, and the proposed order to approve the sale by the Bankruptcy Court;

f) it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Debtors, in consultation with the Creditors' Committee, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Purchase Agreement;

g) it must have a value to the Debtors, in the Debtors' exercise of their reasonable business judgment, after consultation with their advisors, the Committee and its advisors, the DIP Agent and the DIP Lenders and its advisors, and that is greater than or equal to the sum of the value offered under the Stalking Horse Agreement, plus $250,000 (the "Initial Overbid");[2]

h) in the case of a bid that incorporates a credit bid, it must contain a cash component sufficient to satisfy in full all senior liens on the collateral subject to the credit bid;

i) it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume and provides for the Qualified Bidder to pay related cure costs;

j) it contains an irrevocable commitment to (i) fund the Debtors from conclusion of the Auction through Closing and (ii) make payment to the Debtors' prepetition and post-petition lenders, including H.I.G. European Capital Partners LLP, as applicable of all allowed claims due under the credit agreements with such lender that are secured by valid, perfected liens against the assets being sold;;

k) it contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases;

l) it includes an acknowledgement and representation that the bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (B) has relied solely upon its own independent review,

---

[2] The initial overbid shall be (a) an amount equal to (i) the Cash Consideration, the DIP Credit Bid and Release and the Prepetition Credit Bid Release (if any), and (ii) cash consideration in an amount equal to the Break Up Fee and Expense Reimbursement, plus (b) $250,000 in cash.

investigation and/or inspection of any documents and/or the Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Purchase Agreement; and (D) is not entitled to any expense reimbursement, breakup fee, or similar type of payment in connection with its bid;

m) it includes evidence, in form and substance reasonably satisfactory to the Debtors, in consultation with the Creditors' Committee, the DIP Agent and the DIP Lenders, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Purchase Agreement;

n) it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to ten percent (10%) of the Purchase Price;

o) it contains a detailed description of how the Qualified Bidder intends to treat current employees of the Debtors;

p) it contains such other information reasonably requested by the Debtors; and

q) it is received prior to the Bid Deadline.

Notwithstanding the foregoing, the Stalking Horse Purchaser is deemed a Qualified Bidder and the Stalking Horse Agreement is deemed a Qualified Bid for all purposes in connection with the Bidding Process, the Auction, and the Sale.

The Debtors shall notify the Creditors' Committee, the Stalking Horse Purchaser, the DIP Agent, and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids (and with respect to each Qualified Bidder that submitted a bid as to whether such Qualified Bidder's bid constitutes a Qualified Bid) no later than two (2) business days following the expiration of the Bid Deadline.

### D.    **Bid Deadline**

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) counsel to the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020-1104, Attn: Thomas R. Califano, Esq. (thomas.califano@dlapiper.com); and DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: Stuart M. Brown, Esq. (stuart.brown@dlapiper.com), (ii) financial advisors to the Debtors, Cowen and Company, 599 Lexington Avenue, 27th Floor, New York, New York 10022 Attn: Lorie R. Beers; (iii) counsel to the Postpetition Lender, Allen & Overy LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Daniel Guyder, Esq. (daniel.guyder@allenovery.com); and Morris, Nichols, Arsht

& Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Curtis S. Miller (cmiller@MNAT.com), (iv) counsel to the DIP Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL 60614, Attn: Michael D. Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayescholer.com), and (v) counsel to the Prepetition Senior Lender, Levy, Small & Lallas, 815 Moraga Drive, Los Angeles, CA 90049, Attn: Leo D. Plotkin (mailto:lplotkin@lsl-la.com) and Chipman Brown Cicero & Cole, LLP., Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com), so as to be received not later than [_____], 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").

### E.    Credit Bidding

The Stalking Horse Purchaser holds a first priority a security interest in the Assets and its proposed purchase price consists of a credit bid and/or assumption of debt for the Assets. The Stalking Horse Purchaser may submit additional credit bids for the Assets, pursuant to section 363(k) as it deems necessary and desirable.  In addition to the Stalking Horse Purchaser, other secured creditors holding allowed secured claims against the Debtor shall have the right, subject to the provisions of the Bankruptcy Code, applicable law, and any agreements between secured creditors, to credit bid all or any portion of such claims.  In addition to the other requirements of an Initial Overbid, any credit bid made by a party other than the Stalking Horse Purchaser must include a cash component (or otherwise provide cash) sufficient to satisfy all liens senior to the liens of party making the credit bid on the collateral that is subject to the credit bid unless such senior lienholder(s) shall otherwise consent in writing prior to the Auction.

### F.    Evaluation of Competing Bids

A Qualified Bid will be valued by the Debtors, in consultation with the Creditors' Committee and the DIP Agent, based upon several factors including, without limitation, (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) any proposed revisions to the Stalking Horse Agreement, and (4) any other factors deemed relevant by the Debtors in their reasonable discretion in consultation with the Creditors' Committee and the DIP Agent.

### G.    No Qualified Bids

If the Debtors do not receive any Qualified Bids other than the Stalking Horse Agreement, the Debtors will not hold an auction and the Stalking Horse Purchaser will be named the Successful Bidder for the Assets.

### H.    Auction Process

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Agreement, the Debtors will conduct auctions of the Assets (the "Auction"), which shall be transcribed on [_____], 2016 (the "Auction Date") at 10:00 a.m. (prevailing Eastern Time), at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, 27th Floor, New York, New York 10020, or such other location as shall be timely communicated to the Stalking Horse Purchaser and Qualified Bidders who have timely submitted a Qualified Bid, and the

Creditors' Committee and the DIP Agent.  The Auction shall run in accordance with the following procedures:

a) The Auction will be conducted openly.  Only a Qualified Bidder who has submitted a Qualified Bid by the Bid Deadline shall be eligible to participate at the Auction; *provided, however*, that any party in interest may attend (but not participate in) the Auction if they provide the Debtors with written notice of their intention to attend the Auction on or before the Bid Deadline.  Such written notice must be sent to proposed counsel for the Debtors via electronic mail, to Jamila Willis, Esq., at jamila.willis@dlapiper.com.

b) Only the Stalking Horse Purchaser and the Qualified Bidders who have timely submitted a Qualified Bid will be entitled to make any subsequent bids at the Auction;

c) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

d) At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors, the Creditors' Committee, and the DIP Agent whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder (defined below) at the conclusion of the Auction.  At least one (1) business day prior to the Auction, the Debtors will provide copies of the Qualified Bid which the Debtors believe in their reasonable discretion is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders, the Creditors' Committee, and the DIP Agent;

e) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

f) The Debtors, after consultation with their advisors, the Creditors' Committee and its advisors, and the DIP Agent and its advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction;

g) Bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the estate of at least an additional $250,000 above the prior bid (the "Overbid Increments").  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that it believes to be the highest or otherwise better offer (the "Leading Bid").  A

round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Qualified Bidders will not have the opportunity to pass. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtors, in consultation with the Creditors' Committee and the DIP Agent, will give effect to any liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors; and

h) The Auction may be adjourned by the Debtors in consultation with the DIP Agent and in such an event, the Debtors shall provide reasonable notice to Qualified Bidders of the time and place for the resumption of the Auction.

### I.    Selection of Successful Bid

Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors, the Creditors' Committee and its advisors, and the DIP Agent and its advisors, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders submitted at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder"), and communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid by the Debtors, after consultation with the Creditors' Committee and the DIP Agent, at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

Unless otherwise agreed to by the Debtors and the Successful Bidder, within two (2) days after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Debtors will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing.

### J.    Return of Deposits

All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.

### K.    Back-Up Bidder

If an Auction is conducted, the Qualified Bidder or Qualified Bidders with the next highest or otherwise best Qualified Bid to the Successful Bidder, as determined by the Debtors, in consultation with the Creditors' Committee and the DIP Agent, in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until the earlier of a closing of a sale transaction with the Successful Bidder and the date that is sixty (60) days after the Sale Hearing.

Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court.

Notwithstanding the foregoing, if the Stalking Horse Purchaser is not the prevailing bidder at the conclusion of the Auction, the Stalking Horse Purchaser, may, at its sole and absolute discretion, keep its bid to consummate the transactions contemplated by the Stalking Horse Agreement (as the same may be improved upon in the Auction) open and irrevocable until entry of an order approving the bid of a prevailing bidder.

### L.      Modifications

The Debtors, in consultation with the Stalking Horse Purchaser, the Creditors' Committee, and the DIP Agent, may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment; provided that such modifications are disclosed to all Potential Bidders or Qualified Bidders, as applicable, prior to or during the Auction.  For the avoidance of doubt, the Debtors, in the exercise of their fiduciary duties and in their sole discretion, may modify or waive the provisions of these Bidding Procedures without the prior consent of any other party, including the Creditors' Committee and the DIP Lenders.

### M.      Consent to Jurisdiction

All bidders at the Auction shall be deemed to have consented to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the Purchase Agreement.

### III.    Sale Hearing



The Debtors will seek entry of an order from the Bankruptcy Court at the Sale Hearing to begin on [_____], 2016 at [__:__] [_].m. (prevailing Eastern time), to approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bid Procedures.

**Exhibit 2**

**Significant Dates[1]**

- **Bid Deadline:**                          [_____], 2016 at 5:00 p.m. (ET)

- **Auction:**                               [_____], 2016  at 10:00 a.m. (ET)

- **Assumption Objection Deadline**      [_____ ], 2016 at 4:00 p.m. (ET)

- **Notice of Election Deadline**        [_____ ], 2016 at 4:00 p.m. (ET)

- **Sale Objection Deadline:**           [_____ ], 2016 at 4:00 p.m. (ET)

- **Sale Hearing:**                      [_____], 2016 at  [__:__] [_].m. (ET)

---

[1] These dates are subject to modification.

**<u>Exhibit 3</u>**

**Sale Notice**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

<table>
<tr><td>

In re:

XTERA COMMUNICATIONS, INC., *et al.*,

Debtors.[1]

</td><td>

Chapter 11

Case No. 16-12577 (   )

(Jointly Administered)

</td></tr>
</table>

## NOTICE OF SALE PROCEDURES,
## AUCTION DATE AND SALE HEARING

**PLEASE TAKE NOTICE** that on November 15, 2016, the above-captioned debtors and debtors in possession (the "Debtors") filed the *Motion of the Debtors and Debtors in Possession Pursuant to Section 105(a), 363, and 365 of the Bankruptcy Code for Entry of Orders (I)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Scheduling Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Bid Protections; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of the Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Motion").[2] The Debtors seek, among other things, to sell their Assets to the successful bidders (the "Successful Bidder") at an auction free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 363 and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that on [_____], 2016, the Court entered an order (the "Bidding Procedures Order") approving the Motion and the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the Sale of the Assets. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. To the extent there are any inconsistencies between the Bidding Procedures Order (including the Bidding Procedures) and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, auctions (the "Auction") to sell the Assets will be conducted on [_____], 2016

---

[1]   The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Xtera Communications, Inc. (4611); Xtera Communications, Ltd. (4611); Xtera Communications Canada, Ltd. (9560); Xtera Communications Hong Kong Ltd. (4611); PMX Holdings, Ltd (4611); Azea Networks, Inc. (7821); Neovus, Inc. (2940); and Xtera Asia Holdings, LLC (4611). The mailing address for the Debtors, solely for purposes of notices and communications, is 500 W. Bethany Drive Suite 100 Allen, TX 750133.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

at 10:00 a.m. (prevailing Eastern Time) at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, 27th Floor, New York, New York 10020, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sales of the Assets to the Successful Bidder (the "Sale Hearing") before the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 on [_____], **2016 at [__:__] [.]m.  (prevailing Eastern Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing. Objections to the Sale shall be filed and served **so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on [_____], 2016** by: (i) counsel to the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020-1104, Attn: Thomas R. Califano, Esq. (thomas.califano@dlapiper.com), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: Stuart M. Brown, Esq. (stuart.brown@dlapiper.com), (ii) financial advisors to the Debtors, Cowen and Company, 599 Lexington Avenue, 27th Floor, New York, New York 10022 Attn: Lorie R. Beers; (iii) counsel to the Postpetition Lender, Allen & Overy LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Daniel Guyder, Esq. (daniel.guyder@allenovery.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Curtis S. Miller (cmiller@MNAT.com); (iv) counsel to the DIP Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL 60614, Attn: Michael D. Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayescholer.com); and (v) counsel to the Prepetition Senior Lender, Levy, Small & Lallas, 815 Moraga Drive, Los Angeles, CA 90049, Attn: Leo D. Plotkin (mailto:lplotkin@lsl-la.com) and  Chipman Brown Cicero & Cole, LLP., Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com)  (collectively, the "Notice Parties").

> **PLEASE TAKE FURTHER NOTICE** that this Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, the Bidding Procedures, and the Bidding Procedures Order, which Bidding Procedures Order shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a request in writing to DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020, Attn: Jamila J. Willis, or by emailing jamila.willis@dlapiper.com. Copies of the Motion and Bid Procedures Order also may be obtained free of charge on the Debtors' case website: http://dm.epiq11.com/#/case/xci

Dated:  [_____] , 2016
       Wilmington, Delaware

Respectfully submitted,

DLA PIPER LLP (US)

  /s/  _____

Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  stuart.brown@dlapiper.com

-and-

Thomas R. Califano (pro hac vice admission pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
Email:  thomas.califano@dlapiper.com

*Proposed Counsel to Debtors and
Debtors in Possession*

**<u>Exhibit 4</u>**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>XTERA COMMUNICATIONS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-12577 (   )<br><br>(Jointly Administered) |

**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS
AND UNEXPIRED LEASES OF THE DEBTORS
<u>THAT MAY BE ASSUMED AND ASSIGNED</u>**

   **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") may seek to assume an executory contract or unexpired lease to which <u>you may be a party</u>. The executory contracts and unexpired leases that the Debtors may seek to assume (each such potentially assumed contract and lease, an "<u>Assumed Executory Contracts</u>") are described on <u>Exhibit A</u> attached to this Notice. The amount shown on <u>Exhibit A</u> hereto as the "Cure Amount" is the amount, if any, based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Assumed Executory Contract. If you have questions regarding this notice, you should consult with appropriate counsel.

   **PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount shown for the Assumed Executory Contract(s) on <u>Exhibit A</u> to which you are a party, you must file in writing with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, an objection on or before _____, **2016 at 4:00 p.m. (prevailing Eastern Time)**. Any objection must set forth the specific default or defaults alleged and set forth any cure amount as alleged by you. If a contract or lease is assumed and assigned pursuant to a Court order approving same, then unless you properly file and serve an objection to the Cure Amount contained in this Notice, you will receive at the time of the closing of the sale (or as soon as reasonably practicable thereafter or as otherwise agreed), the Cure Amount set forth herein, if any. Any non-debtors party to an Assumed Executory Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached <u>Exhibit A</u>.

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Xtera Communications, Inc. (4611); Xtera Communications, Ltd. (4611); Xtera Communications Canada, Ltd. (9560); Xtera Communications Hong Kong Ltd. (4611); PMX Holdings, Ltd (4611); Azea Networks, Inc. (7821); Neovus, Inc. (2940); and Xtera Asia Holdings, LLC (4611). The mailing address for the Debtors, solely for purposes of notices and communications, is 500 W. Bethany Drive Suite 100 Allen, TX 750133.

PLEASE TAKE FURTHER NOTICE that if you have any other objection to the Debtors' assumption and assignment of the Assumed Executory Contract to which you may be a party, including with respect to the ability of the  Stalking Horse Purchaser to provide adequate assurance of future performance under the Assumed Executory Contract, you also must file that objection in writing no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2016, provided, however, that any counterparty may raise at the Sale Hearing an objection to the assumption and assignment of the Assumed Executory Contract solely with respect to the ability of a Successful Bidder other than the Stalking Horse  Purchaser to provide adequate assurance of future performance under the Assumed Executory Contract.

PLEASE TAKE FURTHER NOTICE that on November 15, 2016, the Debtors filed the *Motion of the Debtors and Debtors in Possession Pursuant to Section 105(a), 363, and 365 of the Bankruptcy Code for Entry of Orders (I)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Scheduling Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Bid Protections; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Motion").[2]

PLEASE TAKE FURTHER NOTICE that, on _____, 2016, the Court entered an Order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures requested in the Motion, which Bidding Procedures Order governs (i) the bidding process for the Sale of the Debtors' Assets, and (ii) procedures for the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases.

PLEASE TAKE FURTHER NOTICE that the Motion also seeks Court approval of the sale (the "Sale") of the Assets to the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to section 363 of the Bankruptcy Code, including the assumption by the Debtors and assignment to the buyer of the Assumed Executory Contracts pursuant to section 365 of the Bankruptcy Code.  Within 24 hours after adjournment of the Auction (if any), unless otherwise agreed to by the Debtors, but in no event, at least one (1) business day prior to the Sale Hearing, the Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court and serve such notice by fax, email or overnight mail to all counterparties whose contracts are to be assumed and assigned.

PLEASE TAKE FURTHER NOTICE that a hearing (the "Sale Hearing") to approve the Sales and authorize the assumption and assignment of the Assumed Executory Contracts will be held on [_____], 2016 at 10:00 a.m. (prevailing Eastern Time), before the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE** that any objection you may file must be served so as to be received by the following parties by the applicable objection deadline date and time: (i) counsel to the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020-1104, Attn: Thomas R. Califano, Esq. (thomas.califano@dlapiper.com), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: Stuart M. Brown, Esq. (stuart.brown@dlapiper.com), (ii) financial advisors to the Debtors, Cowen and Company, 599 Lexington Avenue, 27th Floor, New York, New York 10022 Attn: Lorie R. Beers; (iii) counsel to the Postpetition Lender, Allen & Overy LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Daniel Guyder, Esq. (daniel.guyder@allenovery.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Curtis S. Miller (cmiller@MNAT.com); (iv) counsel to the DIP Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL 60614, Attn: Michael D. Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayescholer.com); and (v) counsel to the Prepetition Senior Lender, Levy, Small & Lallas, 815 Moraga Drive, Los Angeles, CA 90049, Attn: Leo D. Plotkin (mailto:lplotkin@lsl-la.com) and Chipman Brown Cicero & Cole, LLP., Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com) (collectively, the "Notice Parties").

       **PLEASE TAKE FURTHER NOTICE** that the buyer shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under sections 365(b) and (f) of the Bankruptcy Code, in connection with the proposed assignment of any Assumed Executory Contract. The Court shall make its determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to sections 365(b) and (f) of the Bankruptcy Code at the Sale Hearing.

       **PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtors and the non-debtors party cannot resolve the Cure Amount, the Debtors shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties unless the Successful Bidder or Stalking Horse Purchaser elects to reject the related contract or lease. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing. The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Assumed Executory Contract or the sale of the Assets to the Successful Bidder.

       **PLEASE TAKE FURTHER NOTICE** that, except to the extent otherwise provided in the Purchase Agreement with the Successful Bidder, pursuant to section 365(k) of the Bankruptcy Code, the Debtors and the Debtors' estate shall be relieved of all liability accruing or arising after the effective date of assumption and assignment of the Assumed Executory Contracts.

**PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the Debtors to assume any Assumed Executory Contracts or to pay any Cure Amount.[3]

PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITH NO FURTHER NOTICE.

ANY NON-DEBTORS PARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DO NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH ASSUMED EXECUTORY CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.

Dated:  [_____] , 2016
       Wilmington, Delaware

Respectfully submitted,

DLA PIPER LLP (US)

  /s/ _____
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  stuart.brown@dlapiper.com

-and-

Thomas R. Califano (pro hac vice admission pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
Email:  thomas.califano@dlapiper.com

*Proposed Counsel to Debtors and*
*Debtors in Possession*

---

[3]    "Assumed Executory Contracts" are those Contracts and Leases that the Debtors believes may be assumed and assigned as part of the orderly transfer of the Assets; however, the Successful Bidder may choose to exclude certain of the Debtors' Contracts or Leases from the list of Assumed Executory Contracts as part of their Qualifying Bid, causing such Contracts and Leases not to be assumed by the Debtors.

**<u>Exhibit 5</u>**

**Section 365(n) Election Deadline Notice**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| XTERA COMMUNICATIONS, INC., *et al.*, | |
| Debtors.[1] | Case No. 16-12577 (    ) |
| | (Jointly Administered) |

**NOTICE OF DEADLINE TO MAKE ELECTION TO RETAIN RIGHTS UNDER
SECTION 365(N) OF THE BANKRUPTCY CODE WITH RESPECT TO
AGREEMENTS PURSUANT TO WHICH XTERA COMMUNICATIONS, INC.
LEASED RIGHTS TO INTELLECTUAL PROPERTY**

      **PLEASE TAKE NOTICE** that on November 15, 2016, the above-captioned debtors and debtors in possession (the "Debtors") filed the *Motion of the Debtors and Debtors in Possession Pursuant to Section 105(a), 363, and 365 of the Bankruptcy Code for Entry of Orders (I)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Scheduling Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Bid Protections; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of the Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Motion").[2] Pursuant to the Motion, the Debtors are seeking to sell substantially all their assets at an auction free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 363 and 365 of the Bankruptcy Code (the "Sale").

      **PLEASE TAKE FURTHER NOTICE** that on [_____], 2016, the Court entered an order (the "Bidding Procedures Order") approving the Motion and the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the Sale.

      **PLEASE TAKE FURTHER NOTICE** that you are receiving this notice because you may be a party (a "Pre-Petition Licensee") to a pre-petition license of intellectual property with Xtera Communications, Inc. ("Xtera Inc.") and/or one or more of the Debtors in these

---

[1]    The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Xtera Communications, Inc. (4611); Xtera Communications, Ltd. (4611); Xtera Communications Canada, Ltd. (9560); Xtera Communications Hong Kong Ltd. (4611); PMX Holdings, Ltd (4611); Azea Networks, Inc. (7821); Neovus, Inc. (2940); and Xtera Asia Holdings, LLC (4611). The mailing address for the Debtors, solely for purposes of notices and communications, is 500 W. Bethany Drive Suite 100 Allen, TX 750133.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Chapter 11 Cases pursuant to which one or more of the Debtors have granted a license to their intellectual property (a "Pre-Petition License").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Bid Procedures Order, any Pre-Petition Licensee that wishes to retain its rights under a Pre-Petition License pursuant to section 365(n)(1)(B) of the Bankruptcy Code, must file in this case a notice of election to retain such rights (a "Notice of Election") on or prior to _____, 2016 (the "Notice of Election Deadline") and serve such notice on the following parties (i) counsel to the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020-1104, Attn: Thomas R. Califano, Esq. (thomas.califano@dlapiper.com), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: Stuart M. Brown, Esq. (stuart.brown@dlapiper.com), (ii) financial advisors to the Debtors, Cowen and Company, 599 Lexington Avenue, 27th Floor, New York, New York 10022 Attn: Lorie R. Beers; (iii) counsel to the Postpetition Lender, Allen & Overy LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Daniel Guyder, Esq. (daniel.guyder@allenovery.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Curtis S. Miller (cmiller@MNAT.com); (iv) counsel to the DIP Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL 60614, Attn: Michael D. Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayescholer.com); and (v) counsel to the Prepetition Senior Lender, Levy, Small & Lallas, 815 Moraga Drive, Los Angeles, CA 90049, Attn: Leo D. Plotkin (mailto:lplotkin@lsl-la.com) and  Chipman Brown Cicero & Cole, LLP., Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com) (collectively, the "Notice Parties").

PLEASE TAKE FURTHER NOTICE that any Pre-Petition Licensee that fails to timely file a Notice of Election with respect to a Pre-Petition License WILL BE IRREVOCABLY DEEMED TO HAVE ELECTED TO TREAT SUCH PRE-PETITION LICENSE AS TERMINATED UNDER SECTION 365(n)(1)(A) OF THE BANKRUPTCY CODE AND WILL HAVE NO FURTHER RIGHTS UNDER SUCH PRE-PETITION LICENSE.

PLEASE TAKE FURTHER NOTICE that a hearing (the "Sale Hearing") to approve the  sale and authorize the assumption and assignment of the Pre-Petition Licenses will be held on [_____], 2016 at 10:00 a.m. (prevailing Eastern Time), before the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing

PLEASE TAKE FURTHER NOTICE that the Debtors, the DIP Agent, the DIP Lenders, and any Successful Bidder (including the Stalking Horse Bidder) reserve their rights to object to any Notices of Election on any and all available grounds, which objections will be heard at the Sale Hearing. If you have questions regarding this notice, you should consult with appropriate counsel.

Dated:  [_____] , 2016
        Wilmington, Delaware

Respectfully submitted,

DLA PIPER LLP (US)

 /s/ _____
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  stuart.brown@dlapiper.com

-and-

Thomas R. Califano (pro hac vice admission pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
Email:  thomas.califano@dlapiper.com

*Proposed Counsel to Debtors and
Debtors in Possession*