**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| XTERA COMMUNICATIONS, INC., *et al.*, | Case No.: 16-12577 (KJC) |
| Debtors. | (Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF XTERA COMMUNICATIONS, INC., *et al.*, ON BEHALF OF THE DEBTORS' ESTATES, | |
| Plaintiff, | |
| v. | Adv. Pro. No. |
| PACIFIC WESTERN BANK; HORIZON TECHNOLOGY FINANCE CORPORATION; ARCH VENTURE FUND VI, L.P.; NEW ENTERPRISE ASSOCIATES 9, LIMITED PARTNERSHIP; NEW ENTERPRISE ASSOCIATES 10, LIMITED PARTNERSHIP; JOHN R. HOPPER; CLIFFORD H. HIGGERSON; JOHN DOES 1-10; AND XYZ COMPANIES 1-10, | **ADVERSARY COMPLAINT** |
| Defendants. | |

The Official Committee of Unsecured Creditors (the "Committee") of Xtera Communications, Inc. ("Xtera") and the other debtors and debtors-in-possession (collectively with Xtera, the "Debtors") appointed in the above-captioned chapter 11 bankruptcy cases (the "Chapter 11 Cases"), on behalf of the Debtors' estates, as and for its adversary complaint (the "Complaint") against the above-captioned defendants (collectively, the "Defendants") pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and §§ 105, 502, 506, 510, 544, 548, 550, and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), hereby respectfully alleges as follows:

## PRELIMINARY STATEMENT [1]

1.      Through this adversary proceeding, the Committee, on behalf of the Debtors' estates, seeks to (among other things):

- avoid and recover, pursuant to sections 544, 548 and 550 of the Bankruptcy Code and applicable state law, the fraudulent transfers made by the Debtors related to obligations incurred for which the Debtors received less than reasonably equivalent value and were or were left insolvent, undercapitalized, and unable to pay their debts as they matured;

- avoid, recover and preserve certain unperfected security interests, pledges and/or liens for the benefit of the Debtors' estates pursuant to sections 544 and 550 of the Bankruptcy Code; and

- recharacterize as equity contributions the "loans" extended by certain insiders to the Debtors on the eve of the filing of the Chapter 11 Cases.

## JURISDICTION, VENUE, AND STANDING

2.      On November 15, 2016 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary bankruptcy petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334(b) and the Standing Order of the United States District Court for the District of Delaware referring all cases and proceedings arising under the Bankruptcy Code to the Bankruptcy Judges of this District.

4.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). In the event any part of this adversary proceeding is found to be non-core, the Committee consents to the entry of final orders and judgments by this Court pursuant to Bankruptcy Rule 7008.

---

[1] Capitalized terms in the Preliminary Statement have the meanings ascribed thereto in subsequent sections of the Complaint.

5.      Venue is proper in this Court and this District pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and is related to the Chapter 11 Cases currently pending before the Court.

6.      The Committee has standing to bring this Complaint pursuant to paragraph 25(c) of the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing (II) Granting Adequate Protection to the Prepetition Secured Parties and (III) Granting Related Relief*.  *See* Case No. 16-12577 [D.I. 164].

## THE PARTIES

7.      Plaintiff is the Official Committee of Unsecured Creditors duly appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the Office of the United States Trustee on November 23, 2016.

8.      Defendant Pacific Western Bank is a commercial banking institution with offices located at 406 Blackwell Street, Suite 240, Durham, North Carolina 27701.

9.      Defendant Horizon Technology Finance Corporation is a venture lending platform that provides structured debt products and maintains an office located at 312 Farmington Avenue, Farmington, Connecticut 06032.

10.     Defendant ARCH Venture Fund VI, L.P. is a venture lending platform that provides structured debt products and maintains offices in multiple locations, including Chicago, Illinois; Austin, Texas; Seattle, Washington; and San Francisco, California.

11.     Defendant New Enterprise Associates 9, Limited Partnership is a venture lending platform that provides structured debt products and maintains offices located at 1954 Greenspring Drive, Suite 600, Timonium, Maryland 21093.

12.     Defendant New Enterprise Associates 10, Limited Partnership is a venture lending platform that provides structured debt products and maintains offices located at Greenspring Drive, Suite 600, Timonium, Maryland 21093.

13.     Defendant John R. Hopper ("Hopper") is an individual with an address of 500 West Bethany Drive #100, Allen, Texas 75013.  Hopper was at all relevant times President, Chief Executive Officer and a Director of the Debtors.

14.     Defendant Clifford H. Higgerson ("Higgerson") is an individual residing at 2311 Loma Prieta Lane, Menlo Park, California 94025.  Higgerson was at all relevant times a Director of the Debtors.

15.     John Does 1-10 and XYZ Companies 1-10 (the "Additional Parties") are persons and legal entities – including without limitation officers, directors, or equity interest holders of the Debtors – that benefitted from or otherwise were involved in or party to one or more of the transactions or occurrences alleged in this Complaint.  The identity of the Additional Parties will be determined through discovery in this adversary proceeding.

## BACKGROUND

## I.    The Debtors' Business and its Financial Decline

16.     The Debtors are providers of high-capacity optical solutions, supporting the high growth in global demand for bandwidth.  They sell their high-capacity optical transport solutions to telecommunications service providers, enterprises and government entities worldwide to support their deployments of long-haul terrestrial and submarine optical cable networks.

17.     In the Debtors' Prospectus filed with the SEC on November 12, 2015 in connection with the initial public offering of 5,000,000 shares of common stock, the Debtors stated they "have a history of significant operating losses" and they "anticipate[d] increasing

[their] operating expenses in the future and may not achieve or maintain profitability in the future."

18.    For fiscal year ended September 30, 2012, the Debtors reported a net loss of $10.8 million; for fiscal year ended September 30, 2013, the Debtors reported a net loss of $24.6 million; and for fiscal year ended September 30, 2014, the Debtors reported a net loss of $26.1 million.

19.    Suffice it to say, the Debtors have had a history of experiencing significant operating losses, negative cash flows, negative EBITDA, negative and deteriorating working capital, and increasing accounts payable.  Repeatedly, the Debtors had to prop up the business by taking on "loans" from stockholders and insiders that were ultimately converted into equity.

20.    As of September 30, 2014, the Debtors' current liabilities exceeded their current assets by $24.7 million.

21.     As of June 30, 2015, Xtera had an accumulated deficit of $378.1 million.

22.    In June 2015, the Debtors' accountants issued a "going concern opinion" due to the reported net loss of $26.1 million during the year ended September 30, 2014, and as of that date, the Debtors' current liabilities exceeded their current assets by $24.7 million.

23.    In the November 12, 2015 Prospectus, the Debtors stated:  "As a result of operating losses and negative cash flows, the Company was unable to meet certain financial terms of its long-term debt during the year ended September 30, 2013."

24.    As of May 31, 2016, Xtera continued to be a failing enterprise.  By then, total liabilities were more than the book value of its assets and the value continued to decline.

**II.     The Senior Loan Facility and the Senior Lender's Unperfected Interest in Certain Assets**

25.     Pursuant to a Loan and Security Agreement dated as of January 16, 2015 (as amended, the "Senior Loan Agreement") by and among Xtera, Azea Networks, Inc., Neovus, Inc. and Xtera Asia Holdings, LLC, as borrowers (collectively, the "Senior Loan Borrowers") and Pacific Western Bank, as successor-by-merger to Square 1 Bank (the "Senior Lender"), the Senior Lender committed to make loans and other financial accommodations to the Senior Loan Borrowers consisting of a revolving line of credit facility up to $12.5 million (subject to a borrowing base) (the "Senior Loan Facility").

26.     Proceeds of the Senior Loan Facility were to be used solely for the Senior Loan Borrowers' working capital.

27.     In October 2015, and on seven additional occasions during 2016, the Senior Loan Agreement was amended.

28.     Pursuant to Section 2 of the Senior Loan Agreement, the Senior Loan Borrowers purportedly granted to the Senior Lender a security interest in all:  accounts, inventory, equipment, deposit accounts, general intangibles (including without limitation all intellectual property), investment property, commercial tort claims, documents, instruments, promissory notes, chattel paper, letters of credit, letter-of-credit rights, fixtures, farm products, money, and all other goods and personal property of every kind, tangible and intangible (collectively, the "Senior Collateral").

29.     Notwithstanding the security interest purportedly granted to the Senior Lender in the Senior Collateral, the Senior Lender did not obtain a security interest in any assets of the

Debtors that are not Senior Loan Borrowers and/or failed to perfect its security interest in the following assets (the "Unperfected Senior Assets")[2]:

    i.    All assets of Xtera Communications Ltd., Xtera Communications Canada, Ltd., Xtera Communications Hong Kong Ltd., PMX Holdings, Ltd., and Xtera Communicacoes Do Brasil LTDA;

    ii.    Certain deposit accounts owned by the Debtors, including, but not limited to: (a) Xtera Communications, Inc. – Silicon Valley Bank ending in 5703 ($171,094.62); Bank of Montreal ending in 1440 ($17,155.56); (b) Xtera Communications Canada, Inc. – Bank of Montreal ending in 1475 ($596.71); Bank of Montreal ending in 9945 ($274.19); (c) Xtera Communications, Ltd. – HSBC ending in 3499 ($1,245.75); HSBC ending in 3502 ($7,510.68); HSBC ending in 9815 ($10,575.19); HSBC ending in 5305 ($51,465.30); and (d) Xtera Brasil – HSBC ending in 0813 ($21,323.20).[3]

---

[2] The following additional assets are excluded from the Senior Collateral: (i) any voting stock of any direct subsidiary of any Senior Loan Borrower in excess of 65% of the total combined voting power of all classes of stock of such subsidiary that are entitled to vote; (ii) property which consists of a license of intellectual property to a Senior Loan Borrower pursuant to a license which is non-assignable by its terms without the consent of the licensor thereof; (iii) property which consists of a lease of equipment leased to a Senior Loan Borrower pursuant to a capital lease which by its terms is non-assignable; (iv) equipment as to which the granting of a security interest in it is prohibited by enforceable provisions of applicable law; (v) property that is subject to a lien permitted pursuant to clause (i) of the definition of Permitted Liens under the Senior Loan Agreement, if the grant of a security interest with respect to such property would be prohibited by the agreement creating such Permitted Lien or would otherwise constitute a default thereunder, but only to the extent such prohibition is enforceable under applicable law, and provided that such property will be deemed Collateral upon the termination and release of such Permitted Lien; and (vi) any United States intent-to-use trademark applications to the extent that, and solely during the period in which, the grant, attachment or enforcement of a security interest therein would, under applicable federal law, impair the registrability of such applications or the validity or enforceability of registrations issuing from such applications. The Committee's lien review and investigation are continuing with regard to, *inter alia*, identifying additional assets that may be excluded from the Senior Collateral.

[3] The Committee investigation continues, particularly because the Committee recently learned of accounts that are not listed in the Schedules. For example, Horizon entered into deposit account control agreements with respect to three deposit accounts at Silicon Valley Bank (account numbers ending 6525, 6498, and 0039) that were not listed in the Debtors' Schedules. Assuming these accounts are still in existence, the Senior Lender has not entered into deposit account control agreements with respect to these three accounts and therefore has no perfected security interest with respect to same.

iii.    All patents owned or applied for by any Debtor in any jurisdiction other than the United States;

iv.    All trademarks owned or applied for by any Debtor in any jurisdiction other than the United States;

v.    All United States and foreign jurisdiction copyrights (if any) owned by any Debtor;[4]

vi.    All equity interests of any Debtor in any foreign subsidiary of that Debtor;

vii.    All inventory of any Debtor located outside of the United States;[5]

viii.    All assets of any Debtor that are the subject of a certificate of title statute or maritime law, including, without limitation, automobiles, trucks, trailers, vessels (including ships) and other vehicles;[6]

ix.    All real property owned (if any) and all leasehold interests held by any Debtor;

x.    All commercial tort claims asserted by, that could be asserted by, or are available to any Debtor;

xi.    All life insurance policies and D&O insurance policies owned by any Debtor;[7]

xii.    All prepaid deposits of any Debtor held by a third party;[8] and

---

[4] The Debtors' Schedules do not show any registered U.S. copyrights owned by the Debtors.

[5] The Schedules show that Xtera Communications, Ltd. had inventory with a current value of $7,866.73 as of September 30, 2016. However, the Schedules do not indicate the location of this inventory or the location of the inventory of any other Debtor. Counsel for the Senior Lender and Term Loan Lender each responded that they are unaware of any efforts undertaken by their respective clients to perfect liens on the Debtors' inventory located outside the United States as of the Petition Date.

[8] The Schedules indicate the following prepayments: (1) various deposits and prepayments listed in Sections 7 and 8 of the Xtera Communications, Inc. Schedules totaling $3,887,125.32; (2) multiple holding retainers to Debtors' Counsel, DLA Piper, LLP (US) ("DLA Piper") totaling $700,000.00; (3) rent deposits totaling $20,429.60; (4) security deposit to DLA Piper in the amount of $100,000.00; (4) buildings insurance in the amount of $423.09; (5) various prepaid property taxes, insurance premiums, and miscellaneous payments totaling $144,442.74; and (6) prepayments to Tellabs Do Brasil totaling $1,429.11.

xiii.    All net operating losses of any Debtor.[9]

30.    According to the Schedules of Assets and Liabilities ("Schedules") filed by each Debtor on January 20, 2017, the outstanding principal and interest owed on the Senior Loan Facility was $8,241,313.68 as of the Petition Date.

### III.    The Term Loan Facility and Horizon's Unperfected Interest in Certain Assets

31.    Pursuant to the Venture Loan and Security Agreement (the "Term Loan Agreement") dated as of May 10, 2011 by and among Xtera, as borrower (the "Term Loan Borrower") and Horizon Technology Finance Corporation ("Horizon" or the "Term Loan Lender"), the Term Loan Lender committed to make loans and other financial accommodations to the Term Loan Borrower consisting of a term loan A in the initial principal amount of $10 million ("Term Loan A") and a term loan B in the initial principal amount of $2 million ("Term Loan B" and collectively, the "Term Loan Facility").

32.    Proceeds of the Term Loan Facility were to be used solely for (i) the purchase by the Term Loan Borrower of an Amended and Restated Secured Promissory Note Loan A in the original principal amount of $5 million dated on or about March 28, 2008 made by Meriton Networks Canada Inc. and Meriton Networks US Inc. to Horizon Technology Funding Company LLC, and (ii) working capital or general corporate purposes of the Term Loan Borrower.

33.    The maturity date for the Term Loan Facility was December 1, 2014.

34.    The Term Loan Agreement was amended twelve times.  The first amendment occurred in June 2011, and the next two amendments occurred on December 13, 2011 and March 9, 2012, respectively.

---

[9] According to the Schedules, the Debtors' aggregate net operating losses are $224,484,509.79.

### A.    The Fourth Amendment

35.    The fourth amendment to the Term Loan Agreement was executed on or about April 1, 2013, as reflected in the Fourth Amendment of Venture Loan and Security Agreement (the "Fourth Amendment").

36.    The Fourth Amendment, among other things, added a provision extending the maturity of Term Loan A to March 1, 2015; the Fourth Amendment also added a provision extending the maturity of Term Loan B to October 1, 2015.

37.    The Fourth Amendment also added in a new Section 2.6(g) to the Term Loan Agreement, which added a new obligation referred to as the "Loan A Final Payment," which was defined as the Term Loan Borrower's obligation to pay the Term Loan Lender a payment of $631,800.50 "upon the earlier of (i) payment in full of the principal balance of Loan A, (ii) an Event of Default and demand by Lender of payment in full of Loan A or (iii) on the Loan A Maturity Date, as applicable."

38.    Likewise, the Fourth Amendment added a new Section 2.6(h) to the Term Loan Agreement, which added a new obligation referred to as the "Loan B Final Payment," which was defined as the Term Loan Borrower's obligation to pay the Term Loan Lender a payment of $118,199.26 "upon the earlier of (i) payment in full of the principal balance of Loan B, (ii) an Event of Default and demand by Lender of payment in full of Loan B or (iii) on the Loan B Maturity Date, as applicable."

### B.    The Fifth Amendment

39.    The Term Loan Agreement was amended again on or about November 1, 2013, as reflected in the Fifth Amendment of Venture Loan and Security Agreement (the "Fifth Amendment"), primarily to revise the repayment schedule with respect to the Term Loan Facility.

40.     The Fifth Amendment, *inter alia*, amended the "Loan A Maturity Date" to July 1, 2015; it also amended the "Loan B Maturity Date" to February 12, 2016.

41.     In addition, the Fifth Amendment increased the amounts of the "Loan A Final Payment" and the "Loan B Final Payment" to $1,477,041.31 and $272,958.44, respectively.

42.     In other words, the Fifth Amendment increased the payment obligation with respect to Term Loan A and Term Loan B over the amounts set forth in the Fourth Amendment by $845,240.81 and $154,759.18, respectively.

### C.     The Sixth Amendment

43.     The next amendment of the Term Loan Agreement occurred on or about March 1, 2014, as reflected in the Sixth Amendment of Venture Loan and Security Agreement (the "Sixth Amendment"), again, primarily to revise the repayment schedule with respect to the Term Loan Facility.

44.     The Sixth Amendment increased the amounts of the "Loan A Final Payment" and the "Loan B Final Payment" to $1,666,666.67 and $333,333.33, respectively. In other words, the Sixth Amendment increased the payment obligation with respect to Term Loan A and Term Loan B over the amounts set forth in the Fifth Amendment by $189,625.36 and $60,374.89, respectively.

45.     The Sixth Amendment did not change the loan maturity date for either Term Loan A or Term Loan B.

### D.     The Eighth Amendment

46.     The next relevant amendment to the Term Loan Agreement occurred on or about May 31, 2016, as reflected in the Eighth Amendment of Venture Loan and Security Agreement (the "Eighth Amendment").

47.     The Eighth Amendment increased the amount of the "Loan A Final Payment" to: (i) $1,750,000 if Term Loan A was repaid in full on or before June 30, 2016; $1,812,500 if Term Loan A was repaid in full on or before July 15, 2016; and $1,875,000 if Term Loan A was repaid in full on or before July 31, 2016.  In other words, as of July 31, 2016, the Eighth Amendment increased the Term Loan Borrower's payment obligation with respect to the Term Loan A over the amounts set forth in the Sixth Amendment by $208,333.33.

48.     The Eighth Amendment increased the amount of the "Loan B Final Payment" to: (i) $350,000 if Term Loan B was repaid in full on or before June 30, 2016; $362,500 if Term Loan B was repaid in full on or before July 15, 2016; and $375,000 if Term Loan B was repaid in full on or before July 31, 2016.  In other words, as of July 31, 2016, the Eighth Amendment increased the Term Loan Borrower's payment obligation with respect to the Term Loan B over the amount set forth in the Sixth Amendment by $41,666.67.

49.     The Eighth Amendment also added a provision providing that until the Term Loan Facility was paid in full, as of the first day of each calendar month commencing on August 1, 2016, and continuing each month until the repayment of the Term Loan Facility in full, an additional $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) would be added to the Loan A Final Payment and Loan B Final Payment, respectively.

### E.     Horizon's Collateral and the Unperfected Collateral

50.     Pursuant to Section 4.1 of the Term Loan Agreement, the Term Loan Borrower granted to the Term Loan Lender a security interest in all personal property of the Term Loan Borrower, including without limitation, all goods, equipment, inventory, contract rights, general intangibles, accounts, contract rights, royalties, license rights, license fees and all other forms of obligations owing to the Term Loan Borrower arising out of the sale or lease of goods, the licensing of technology or the rendering of services by the Term Loan Borrower, documents,

cash, deposit accounts, letters of credit, certificates of deposit, instruments, promissory notes, chattel paper and investment property, and any and all claims, rights and interests in any of the foregoing and all substitutions for, additions and accessions to and proceeds thereof, including, without limitation, insurance, condemnation, requisition or similar payments and proceeds of the sale or licensing of intellectual property (the "Horizon Collateral").

51.    The Term Loan Lender failed to properly perfect its liens on the Debtors' equity interests in their foreign subsidiaries.

52.    Notwithstanding the security interest purportedly granted to the Term Loan Lender in the Horizon Collateral, the Term Loan Lender did not obtain a security interest in any assets of any of the Debtors other than the Term Loan Borrower and/or failed to perfect its security interest in the following assets (the "Unperfected Horizon Assets"):

    i.    All assets of Azea Networks, Inc., Neovus, Inc., Xtera Asia Holdings, LLC, Xtera Communications Ltd., Xtera Communications Canada, Ltd., Xtera Communications Hong Kong Ltd., PMX Holdings, Ltd., and Xtera Communicacoes Do Brasil LTDA;

    ii.    Certain deposit accounts owned by the Debtors, including, but not limited to: (a) Xtera Communications, Inc. – Silicon Valley Bank ending in 5703 ($171,094.62); Bank of Montreal ending in 1440 ($17,155.56); (b) Xtera Communications Canada, Inc. – Bank of Montreal ending in 1475 ($596.71); Bank of Montreal ending in 9945 ($274.19); (c) Xtera Communications, Ltd. – HSBC ending in 3499 ($1,245.75); HSBC ending in 3502 ($7,510.68); HSBC ending in 9815 ($10,575.19); HSBC ending in 5305 ($51,465.30); and (d) Xtera Brasil – HSBC ending in 0813 ($21,323.20).[10]

    iii.    All patents owned or applied for by Xtera Communications, Inc. in any jurisdiction other than the United States;

    iv.    All trademarks owned or applied for by Xtera Communications, Inc. in any jurisdiction other than the United States;

---

[10] The Committee's investigation continues with regard to identifying additional accounts.

    v.      All United States or foreign jurisdiction copyrights (if any) owned by Xtera Communications, Inc.;[11]

    vi.     All equity interests of Xtera Communications, Inc. in any foreign subsidiary;

    vii.    All inventory of Xtera Communications, Inc. located outside of the United States;[12]

    viii.   All assets of Xtera Communications, Inc. that are the subject of a certificate of title statute or maritime law, including, without limitation, automobiles, trucks, trailers, vessels (including ships) and other vehicles;[13]

    ix.     All real property owned (if any) and all leasehold interests held by Xtera Communications, Inc.;

    x.      All commercial tort claims asserted by, that could be asserted by, or are available to Xtera Communications, Inc.;[14]

    xi.     All life insurance policies and D&O insurance policies owned by Xtera Communications, Inc.;[15]

    xii.    All prepaid deposits of Xtera Communications, Inc. held by a third party;[16] and

    xiii.   All net operating losses of Xtera Communications, Inc.[17]

53.    Pursuant to the terms of the Subordination Agreement dated as of January 16, 2015 by and between the Senior Lender and the Term Loan Lender, the Term Loan Lender's security interests in its Collateral and its collection and enforcement rights under the Term Loan Agreement are subordinate to those of the Senior Lender under the Senior Loan Agreement.

54.    According to the Schedules, the outstanding principal and interest owed on the Term Loan Facility was $7,575,149.83 as of the Petition Date.

---

[11] *See* note 4, *supra.*

[12] *See* note 5, *supra.*

[14] *See* note 7, *supra.*

[16] *See* note 9, *supra.*

[17] *See* note 10, *supra.*

IV.     **The Bridge Loan Investors' Equity Investment**

55.     Commencing on September 13, 2016 and until the Petition Date, Xtera issued and sold (i) secured promissory notes in the aggregate principal amount of $1.7 million (the "2016 Notes"), and (ii) warrants to purchase up to an aggregate of 1,700,000 shares of Xtera common stock, to New Enterprise Associates 9, Limited Partnership; New Enterprise Associates 10, Limited Partnership; Arch Venture Fund VI, L.P.; Jon Hopper; and Cliff Higgerson (each a "Bridge Loan Investor" and collectively, the "Bridge Loan Investors").

56.     At the time each Bridge Loan Investor provided financial accommodations to the Debtors money pursuant to the 2016 Notes, they were also equity holders of the Debtors.

57.     At all relevant times, Jon R. Hopper was President, Chief Executive Officer and a Director of the Debtors.

58.     At all relevant times, Clifford H. Higgerson was a Director of the Debtors.

59.     The 2016 Notes state that the payment terms were "*two times* the outstanding principal" of the note plus accrued interest "shall be due and payable in full on *or after*" the note's maturity date. (emphasis added)

60.     The 2016 Notes state that at any time the holder of such notes could exchange such notes "for another security interest" of Xtera.

61.     The 2016 Notes further state that "[i]n lieu and replacement of the payment terms [set forth in the note], if the Company shall become the subject of a case under Title 11 of the United States Code, the Company shall pay interest at the rate of 20% per annum."

62.     Pursuant to a Security Agreement dated as of September 13, 2016 by and among Xtera and the Bridge Loan Investors, Xtera granted to the Bridge Loan Investors a security interest in all of its personal property.

63.    Pursuant to the Subordination Agreement dated as of September 13, 2016 by the Bridge Loan Investors in favor of the Senior Lender, and a Subordination Agreement dated as of September 13, 2016 by the Bridge Loan Investors in favor of the Term Loan Lender, the Bridge Loan Investors agreed to subordinate their security interests and debts under the 2016 Notes to the Senior Lender under the Senior Loan Agreement and to the Term Loan Lender under the Term Loan Agreement, respectively.[18]

64.    The Bridge Loan Investors did not properly perfect the security interest granted by Xtera by filing a U.C.C. financing statement in connection with the 2016 Notes.

65.    According to the Schedules, the outstanding principal and interest owed on the 2016 Notes was $3,223,194.40 as of the Petition Date.

**FIRST COUNT**
**Avoidance of Security Interest Against the Senior Lender**
**11 U.S.C. §§ 544(a)(1) and 550**

66.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

67.    Pursuant to 11 U.S.C. § 544(a)(1), a trustee has the rights and powers of, and may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a hypothetical judicial lien creditor who has properly levied on such property.

68.    Pursuant to 11 U.S.C. § 1107(a), the Debtors, as debtors in possession, have all of the rights and powers that a trustee has under 11 U.S.C. § 544(a)(1).  The Committee, on behalf

---

[18]  On or about September 30, 2013, the Senior Lender agreed pursuant to an amendment to the Subordination Agreement that in the event of a sale or liquidation of Senior Loan Borrowers' assets, from the first proceeds received by the Senior Lender and to the extent loaned to the Senior Loan Borrowers by the Bridge Loan Investors and used by the Senior Loan Borrowers as permitted under the terms of the *Seventh Amendment of Venture Loan Security Agreement*, the Senior Lender will pay to the Bridge Loan Investors the amount of the 2016 Notes outstanding. A similar amendment to the Term Loan Lender's Subordination Agreement was also entered into by and between the Term Loan Lender and the Bridge Loan Investors.

of the Debtors' estates, can avoid all security interests that were not properly perfected under applicable law as of the Petition Date.

69.    To the extent that the Senior Lender was granted a security interest in the Senior Collateral by the Debtors pursuant to the Senior Loan Agreement, the Senior Lender did not properly perfect that security interest as of the Petition Date in the Unperfected Senior Assets in accordance with the applicable law.

70.    Therefore, any security interests, pledges and liens purportedly held in the Senior Lender's favor against the Unperfected Senior Assets should be avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under Sections 544 and 550 of the Bankruptcy Code.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against the Senior Lender (a) determining that any security interests, pledges and liens in favor of the Senior Lender in the Unperfected Senior Assets are avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under Sections 544 and 550 of the Bankruptcy Code, rendering the Debtors' interests in such property available to the Debtors' estates; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## SECOND COUNT
### Fraudulent Incurred Obligation – Horizon's Fourth Amendment
### 11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1304(a) and 1307

71.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

72.     Pursuant to 11 U.S.C. § 544(b), a trustee may avoid, *inter alia*, any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claims that is allowable under section 502 of the Bankruptcy Code.

73.     Pursuant to 11 U.S.C. § 1107(a), the Debtors have all of the rights and powers that a trustee has under 11 U.S.C. § 544(b).

74.     The Debtors incurred the obligations under the Fourth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $631,800.50 and the Loan B Final Payment in the amount of $118,199.26 – within four years before the Petition Date.

75.     The Debtors received less than reasonably equivalent value in exchange for the obligations incurred under the Fourth Amendment.

76.     At the time the obligations under the Fourth Amendment were incurred, the Debtors (a) were engaged or about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business, and/or (b) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of section 1304(a) of Title 6 of the Delaware Code.

77.     At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

78.     Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1304(a) and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Fourth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Fourth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $631,800.50 and the Loan B Final Payment in the amount of $118,199.26 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

<u>**THIRD COUNT**</u>
**Fraudulent Incurred Obligation – Horizon's Fourth Amendment**
**11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1305 and 1307**

79.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

80.     The Debtors incurred the obligations under the Fourth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $631,800.50 and the Loan B Final Payment in the amount of $118,199.26 – within four years before the Petition Date.

81.     At the time the obligations under the Fourth Amendment were incurred, the Debtors (a) did not receive reasonably equivalent value in connection with the obligations incurred under the Fourth Amendment, and (b) were insolvent or would be rendered insolvent by the obligations incurred under the Fourth Amendment within the meaning of section 1305 of Title 6 of the Delaware Code.

82.     At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

83.     Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1305 and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Fourth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Fourth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $631,800.50 and the Loan B Final Payment in the amount of $118,199.26 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## FOURTH COUNT
### Fraudulent Incurred Obligation – Horizon's Fifth Amendment
### 11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1304(a) and 1307

84.   The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

85.   The Debtors incurred the obligations under the Fifth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,477,041.31 and the Loan B Final Payment in the amount of $272,958.44 – within four years before the Petition Date.

86.   The Debtors received less than reasonably equivalent value in exchange for the obligations incurred under the Fifth Amendment.

87.   At the time the obligations under the Fifth Amendment were incurred, the Debtors (a) were engaged or about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business, and/or (b) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of section 1304(a) of Title 6 of the Delaware Code.

88.   At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

89.     Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1304(a) and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Fifth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Fifth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,477,041.31 and the Loan B Final Payment in the amount of $272,958.44 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## FIFTH COUNT
### Fraudulent Incurred Obligation – Horizon's Fifth Amendment
### 11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1305 and 1307

90.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

91.     The Debtors incurred the obligations under the Fifth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,477,041.31 and the Loan B Final Payment in the amount of $272,958.44 – within four years before the Petition Date.

92.     At the time the obligations under the Fifth Amendment were incurred, the Debtors (a) did not receive reasonably equivalent value in connection with the obligations incurred under the Fifth Amendment, and (b) were insolvent or would be rendered insolvent by the obligations incurred under the Fifth Amendment within the meaning of section 1305 of Title 6 of the Delaware Code.

93.     At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

94.     Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1305 and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Fifth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Fifth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,477,041.31 and the Loan B Final Payment in the amount of $272,958.44 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## SIXTH COUNT
### Fraudulent Incurred Obligation – Horizon's Sixth Amendment
### 11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1304(a) and 1307

95.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

96.     The Debtors incurred the obligations under the Sixth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,666,666.67 and the Loan B Final Payment in the amount of $333,333.33 – within four years before the Petition Date.

97.     The Debtors received less than reasonably equivalent value in exchange for the obligations incurred under the Sixth Amendment.

98.     At the time the obligations under the Sixth Amendment were incurred, the Debtors (a) were engaged or about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business, and/or (b) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of section 1304(a) of Title 6 of the Delaware Code.

99.     At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

100.     Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1304(a) and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Sixth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Sixth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,666,666.67 and the Loan B Final Payment in the amount of $333,333.33 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

**SEVENTH COUNT**
**Fraudulent Incurred Obligation – Horizon's Sixth Amendment**
**11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1305 and 1307**

101.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

102.     The Debtors incurred the obligations under the Sixth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,666,666.67 and the Loan B Final Payment in the amount of $333,333.33 – within four years before the Petition Date.

103.     At the time the obligations under the Sixth Amendment were incurred, the Debtors (a) did not receive reasonably equivalent value in connection with the obligations incurred under the Sixth Amendment, and (b) were insolvent or would be rendered insolvent by the obligations incurred under the Sixth Amendment within the meaning of section 1305 of Title 6 of the Delaware Code.

104.     At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

105.     Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1305 and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Sixth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Sixth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,666,666.67 and the Loan B Final Payment in the amount of $333,333.33 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

### EIGHTH COUNT
**Fraudulent Incurred Obligation – Horizon's Eighth Amendment**
**11 U.S.C. §§ 548 and 550**

106.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

107.     Pursuant to 11 U.S.C. § 1107(a), the Debtors, as debtors in possession, have all of the rights and powers of a trustee under Section 548 of the Bankruptcy Code.

108.     The Debtors incurred the obligations under the Eighth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,875,000 and the Loan B Final Payment in the amount of $375,000 – within two years before the Petition Date.

109.     The Debtors received less than reasonably equivalent value in exchange for the obligations incurred under the Eighth Amendment.

110.     At the time the obligations were incurred under the Eighth Amendment, the Debtors (i) were insolvent or became insolvent as a result of such incurrences of obligations, (ii) were engaged in business for which their remaining property was an unreasonably small capital, or (iii) intended to incur, or believed they would incur, debts that would be beyond their ability to repay as they matured.

111.     Pursuant to sections 548 and 550 of the Bankruptcy Code, the obligations incurred by the Debtors under the Eighth Amendment are avoidable by the Debtors.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Eighth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,875,000 and the Loan B Final Payment in the amount of $375,000 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

### NINTH COUNT
**Fraudulent Incurred Obligation – Horizon's Eighth Amendment**
**11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1304(a) and 1307**

112.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

113.     The Debtors incurred the obligations under the Eighth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,875,000 and the Loan B Final Payment in the amount of $375,000 – within four years before the Petition Date.

114.     The Debtors received less than reasonably equivalent value in exchange for the obligations incurred under the Eighth Amendment.

115.     At the time the obligations under the Eighth Amendment were incurred, the Debtors (a) were engaged or about to engage in a business or a transaction for which the

remaining assets of the Debtors were unreasonably small in relation to their business, and/or (b) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of section 1304(a) of Title 6 of the Delaware Code.

116.    At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

117.    Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1304(a) and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Eighth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Eighth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,875,000 and the Loan B Final Payment in the amount of $375,000 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper..

<u>**TENTH COUNT**</u>
**Fraudulent Incurred Obligation – Horizon's Eighth Amendment**
**11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1305 and 1307**

118.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

119.    The Debtors incurred the obligations under the Eighth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,875,000 and the Loan B Final Payment in the amount of $375,000 – within four years before the Petition Date.

120.    At the time the obligations under the Eighth Amendment were incurred, the Debtors (a) did not receive reasonably equivalent value in connection with the obligations incurred under the Eighth Amendment, and (b) were insolvent or would be rendered insolvent by the obligations incurred under the Eighth Amendment within the meaning of section 1305 of Title 6 of the Delaware Code.

121.    At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

122.    Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1305 and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Eighth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Eighth Amendment – specifically the obligation to pay the Loan A Final Payment in the amount of $1,875,000 and the Loan B Final Payment in the amount of $375,000 – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

### ELEVENTH COUNT
**Fraudulent Incurred Obligation – $250,000 Monthly
Increases Under Horizon's Eighth Amendment
11 U.S.C. §§ 548 and 550**

123.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

124.    The Debtors incurred the obligations under the Eighth Amendment – specifically the obligation to pay an additional $250,000 ($208,333.33 for Term Loan A and $41,666.67 for

Term Loan B) per month as of the first day of each calendar month commencing on August 1, 2016, and continuing until the repayment in full of the Term Loan Facility – within two years before the Petition Date.

125.     The Debtors received less than reasonably equivalent value in exchange for the obligations incurred under the Eighth Amendment.

126.     At the time the obligations were incurred under the Eighth Amendment, the Debtors (i) were insolvent or became insolvent as a result of such incurrences of obligations, (ii) were engaged in business for which their remaining property was an unreasonably small capital, or (iii) intended to incur, or believed they would incur, debts that would be beyond their ability to repay as they matured.

127.     Pursuant to sections 548 and 550 of the Bankruptcy Code, the obligations incurred by the Debtors under the Eighth Amendment are avoidable by the Debtors.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Eighth Amendment – specifically the obligation to pay an additional $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) per month as of the first day of each calendar month commencing on August 1, 2016, and continuing until the repayment in full of the Term Loan Facility – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

**TWELFTH COUNT**
**Fraudulent Incurred Obligation – $250,000 Monthly**
**Increases Under Horizon's Eighth Amendment**
**11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1304(a) and 1307**

128.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

129.    The Debtors incurred the obligations under the Eighth Amendment – specifically the obligation to pay an additional $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) per month as of the first day of each calendar month commencing on August 1, 2016, and continuing until the repayment in full of the Term Loan Facility – within four years before the Petition Date.

130.    The Debtors received less than reasonably equivalent value in exchange for the obligations incurred under the Eighth Amendment.

131.    At the time the obligations under the Eighth Amendment were incurred, the Debtors (a) were engaged or about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business, and/or (b) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of section 1304(a) of Title 6 of the Delaware Code.

132.    At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

133.    Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1304(a) and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Eighth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Eighth Amendment – specifically the obligation to pay an additional $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) per month as of the first day of each calendar month commencing

on August 1, 2016, and continuing until the repayment in full of the Term Loan Facility – as fraudulently incurred obligations; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

**THIRTEENTH COUNT**
**Fraudulent Incurred Obligation – $250,000 Monthly**
**Increases Under Horizon's Eighth Amendment**
**11 U.S.C. §§ 544(b) and 550; 6 Delaware Code §§ 1305 and 1307**

134.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

135.    The Debtors incurred the obligations under the Eighth Amendment – specifically the obligation to pay $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) per month as of the first day of each calendar month commencing on August 1, 2016, and continuing until the repayment in full of the Term Loan Facility – within four years before the Petition Date.

136.    At the time the obligations under the Eighth Amendment were incurred, the Debtors (a) did not receive reasonably equivalent value in connection with the obligations incurred under the Eighth Amendment, and (b) were insolvent or would be rendered insolvent by the obligations incurred under the Eighth Amendment within the meaning of section 1305 of Title 6 of the Delaware Code.

137.    At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 1301 of Title 6 of the Delaware Code.

138.    Pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 1305 and 1307 of Title 6 of the Delaware Code, the obligations incurred under the Eighth Amendment are voidable.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) avoiding the Debtors' obligations under the Eighth Amendment – specifically the obligation to pay an additional $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) per month as of the first day of each calendar month commencing on August 1, 2016, and continuing until the repayment in full of the Term Loan Facility – as fraudulently incurred obligations that are avoidable; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

### FOURTEENTH COUNT
**Avoidance of Security Interest Against Horizon**
**11 U.S.C. §§ 544(a)(1) and 550**

139.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

140.    Pursuant to 11 U.S.C. § 544(a)(1), a trustee has the rights and powers of, and may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a hypothetical judicial lien creditor who has properly levied on such property.

141.    Pursuant to 11 U.S.C. § 1107(a), the Debtors, as debtors in possession, have all of the rights and powers that a trustee has under 11 U.S.C. § 544(a)(1).  The Committee, on behalf of the Debtors' estates, can avoid all security interests that were not properly perfected under applicable law as of the Petition Date.

142.    The purported security interest that may have been granted to Horizon in connection with the Horizon Collateral did not cover or include the Unperfected Horizon Assets and Horizon did not perfect its purported security interests in the Unperfected Horizon Assets in accordance with the applicable law as of the Petition Date.

143.     Therefore, any security interests, pledges and liens purportedly held in Horizon's favor against the Unperfected Horizon Assets should be avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under sections 544 and 550 of the Bankruptcy Code.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) determining that any security interests, pledges and liens in favor of Horizon in the Unperfected Horizon Assets are avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under Sections 544 and 550 of the Bankruptcy Code, rendering the Debtors' interests in such property available to the Debtors' estates; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

### FIFTEENTH COUNT
### Avoidance of Security Interest Against the Bridge Loan Investors
### 11 U.S.C. §§ 544(a)(1) and 550

144.     The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

145.     Pursuant to 11 U.S.C. § 544(a)(1), a trustee has the rights and powers of, and may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a hypothetical judicial lien creditor who has properly levied on such property.

146.     Pursuant to 11 U.S.C. § 1107(a), the Debtors, as debtors in possession, have all of the rights and powers that a trustee has under 11 U.S.C. § 544(a)(1).  The Committee, on behalf of the Debtors' estates, can avoid all security interests that were not properly perfected under applicable law as of the Petition Date.

147.    Upon information and belief, the purported security interest that may have been granted by Xtera to the Bridge Loan Investors in connection with the 2016 Notes was not perfected in any of the Debtors' assets in accordance with applicable law as of the Petition Date.

148.    Therefore, any security interests, pledges and liens purportedly held in the Bridge Loan Investors' favor against any of the Debtors' assets should be avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under sections 544 and 550 of the Bankruptcy Code.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against the Bridge Loan Investors (a) determining that any security interests, pledges and liens in favor of the Bridge Loan Investors in the Debtors' assets are avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under Sections 544 and 550 of the Bankruptcy Code, rendering the Debtors' interests in such property available to the Debtors' estates; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

### SIXTEENTH COUNT
**Avoidance of Security Interest Against the Bridge Loan Investors
11 U.S.C. §§ 544(a)(1) and 550**

149.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

150.    Pursuant to 11 U.S.C. § 544(a)(1), a trustee has the rights and powers of, and may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a hypothetical judicial lien creditor who has properly levied on such property.

151.    Pursuant to 11 U.S.C. § 1107(a), the Debtors, as debtors in possession, have all of the rights and powers that a trustee has under 11 U.S.C. § 544(a)(1).  The Committee, on behalf

of the Debtors' estates, can avoid all security interests that were not properly perfected under applicable law as of the Petition Date.

152.   If the financing statement that the Bridge Loan Investors filed in 2013 in connection with loans that were subsequently converted to equity interests is determined to have perfected the purported security interest granted by Xtera to the Bridge Loan Investors in connection with the 2016 Notes, such security interest did not cover or include all of the Debtors' assets.   Specifically, the Bridge Loan Investors did not obtain a purported security interest in any assets of any of the Debtors other than Xtera and failed to perfect their purported security interest in the list of assets defined as the Unperfected Horizon Assets and any of the Debtors' deposit accounts.

153.   Therefore, any security interests, pledges and liens purportedly held in the Bridge Loan Investors' favor against the assets defined as the Unperfected Horizon Assets (but including all of the Debtors' deposit accounts) should be avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under sections 544 and 550 of the Bankruptcy Code.

154.   **WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against the Bridge Loan Investors (a) determining that any security interests, pledges and liens in favor of the Bridge Loan Investors in the Unperfected Horizon Assets (but including all of the Debtors' deposit accounts) are avoided, recovered and preserved for the benefit of the Debtors' estates to the fullest extent provided under Sections 544 and 550 of the Bankruptcy Code, rendering the Debtors' interests in such property available to the Debtors' estates; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## SEVENTEENTH COUNT
**Usury – $250,000 Monthly Increase Under Horizon's Eighth Amendment**

155.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

156.    The Eighth Amendment states that it shall be governed by and construed in accordance with the laws of the State of Connecticut.

157.    Under Connecticut General Statute § 37-4, the legal maximum rate of interest that may be charged by any person, firm, corporation or agent thereof is twelve per cent per annum.

158.    Connecticut General Statute § 37-8 provides that "No action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by sections 37-4, 37-5 and 37-6, or upon any cause arising from the negotiation of such loan."

159.    The provision in the Eighth Amendment providing for the additional monthly increase in the amount of $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) per month on and after August 1, 2016 represents disguised interest that exceeds the legal maximum rate of interest that may be charged by Horizon, thus rendering the Eighth Amendment illegal, null and void and unenforceable under 11 U.S.C. § 502(b)(1) and applicable Connecticut law.

160.    Furthermore, Horizon should be barred from collecting any principal and interest under the Term Loan Facility.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) determining that the monthly increase in the amount of $250,000 per month is usurious under Connecticut law, thus rendering the Eighth Amendment illegal, null and void and unenforceable under section 502(b)(1) of the Bankruptcy Code; (b) determining that Horizon is barred from collecting any principal and interest under the Term

Loan Facility; and (c) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## EIGHTEENTH COUNT
**Unenforceable Penalty – $250,000 Monthly Increase Under Horizon's Eighth Amendment**

161.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

162.    The provision in the Eighth Amendment providing for the additional monthly increase in the amount of $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) per month on and after August 1, 2016 represents a penalty, thus rendering the Eighth Amendment illegal, null and void and unenforceable under 11 U.S.C. § 502(b)(1) and applicable Connecticut law.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) determining that the monthly increase in the amount of $250,000 per month is a penalty under Connecticut law, thus rendering the Eighth Amendment illegal, null and void and unenforceable under section 502(b)(1) of the Bankruptcy Code; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## NINETEENTH COUNT
**$250,000 Monthly Increase Payments Under Horizon's Eighth Amendment**
**11 U.S.C. § 506(b)**

163.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

164.    The Eighth Amendment grants Horizon the right to collect the additional monthly increase in the amount of $250,000 ($208,333.33 for Term Loan A and $41,666.67 for Term Loan B) until the Term Loan Facility is paid in full.

165.    These increases of $250,000 per month on the first day of each calendar month are not reasonable fees, costs or charges within the meaning of 11 U.S.C. §506(b) .

166.    Accordingly, Horizon is not entitled to be paid these sums even if it is determined to be oversecured.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against Horizon (a) determining that the monthly increases in the amount of $250,000 are not reasonable fees, costs or charges that Horizon could be entitled to receive under section 506(b) of the Bankruptcy Code; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## TWENTIETH COUNT
### Recharacterization – the 2016 Notes

167.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

168.    Under the equitable powers conferred upon the Court by section 105 of the Bankruptcy Code, the Court can look to the substance of a transaction and determine, notwithstanding the fact that the parties have described the 2016 Notes as "loans" to the Debtors, that those transactions nevertheless should be treated as an equity investment.

169.    The circumstances surrounding the 2016 Notes – specifically, the fact that those funds were advanced by insiders and at a time when the Debtors were insolvent and unable to obtain financing from any other source — are indicative of an equity investment in the Debtors, rather than extensions of credit.

170.    The 2016 Notes have no fixed maturity date and no fixed payments of principal and interest.

171.    In order to prevent the injustice to unsecured creditors that would result from treating the 2016 Notes as indebtedness, the 2016 Notes should be recharacterized as equity contributions.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against the Bridge Loan Investors (a) declaring that the 2016 Notes constitute equity contributions to the Debtors, rather than secured indebtedness and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre-and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## TWENTY-FIRST COUNT
### Recharacterization or Disallowance of Payment of Interest, Fees, Costs and Expenses – 11 U.S.C. § 506(b)

172.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

173.    Pursuant to § 506(b) of the Bankruptcy Code, "To the extent that an allowed secured claim is secured by property the value of which … is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." The limitation contained in Bankruptcy Code § 506(b), however, indicates that only oversecured creditors, and not undersecured creditors, are entitled to receive such costs, fees and related payments.

174.    To the extent that the Senior Lender is undersecured, any post-petition payments of interest, fees, costs and expenses to or for the benefit of the Senior Lender should be either disallowed or applied against the principal amount of the Senior Lender's debt.

175.    To the extent that Horizon is undersecured, any post-petition payments of interest, fees, costs and expenses to or for the benefit of Horizon should be either disallowed or applied against the principal amount of Horizon's debt.

176.    To the extent that the Bridge Loan Investors are undersecured, any post-petition payments of interest, fees, costs and expenses to or for the benefit of the Bridge Loan Investors should be either disallowed or applied against the principal amount of the Bridge Loan Investors' debt.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against (a)(i) the Senior Lender, (ii) Horizon and (iii) the Bridge Loan Investors, that to the extent either one or all of them are unsecured, the Debtors' post-petition payments of interest, fees, costs and expenses to or for their respective benefit, should either be disallowed or applied against the principal amount of their respective debt; and (b) awarding (i) reasonable attorneys' fees and costs, (ii) pre- and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

### <u>TWENTY-SECOND COUNT</u>
**<u>Disallowance of Claims – 11 U.S.C. § 502(d)</u>**

177.    The Committee restates the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

178.    The Committee objects, pursuant to sections 105, 502, 506, 544 550, 551 and 552 of the Bankruptcy Code, to the allowance of claims filed by or on behalf of the Senior Lender, Horizon and the Bridge Loan Investors.

**WHEREFORE**, the Committee, on behalf of the Debtors' estates, demands judgment in its favor and against (a)(i) the Senior Lender, (ii) Horizon and (iii) the Bridge Loan Investors, disallowing and/or re-charactering their respective claims as unsecured; and (b) awarding (i)

reasonable attorneys' fees and costs, (ii) pre- and post-judgment interest, and (iii) such other relief as the Court deems just and proper.

## <u>RESERVATION OF RIGHTS</u>

The causes of action set forth in this Complaint are based upon the information provided to date by the Debtors in connection with the filing of their Chapter 11 Cases and by the Debtors and certain of the Defendants in response to the Committee's informal discovery requests. Because discovery is ongoing, the Committee may become aware of additional causes of action not set forth in this Complaint. Accordingly, the Committee reserves the right to (a) amend this Complaint, including but not limited to adding additional claims, additional parties, and modifying claims asserted herein.

*[signature page follows]*

Dated: January 23, 2017
     Wilmington, DE

**BAYARD, P.A.**

*/s/ Evan T. Miller*
Justin R. Alberto (No. 5126)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395

-and-

**LOWENSTEIN SANDLER LLP**
David M. Banker, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402

-and-

Kenneth A. Rosen, Esq.
Michael Savetsky, Esq.
Michael Papandrea, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400

*Counsel to the Official Committee*
*of Unsecured Creditors*