**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| XTERA COMMUNICATIONS, INC., *et al.*,[1] | Case No. 16-12577 (KJC) |
| | (Jointly Administered) |
| Debtors. | **Related D.I.: 13, 63, 66, 83, 86, 89, 90, 91, 92, 94, 100, 101, 102, 138, 141, 147, 154, 172, 173, 179, 180, 189, 209, 211, 221, 223, 227, 228, 229, 231, 232, 233, 235, 236, 261, 266, 274** |

**ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS PURSUANT TO THE STALKING HORSE AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (C) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] dated November 15, 2016 of the above-captioned debtors (the "**Debtors**") for, among other things, entry of an order (the "**Order**") (i) approving the sale (the "**Sale**") to the Purchaser (as defined below) of substantially all of the Debtors' (as defined below) assets (the "**Transferred Assets**") as described in the Asset Purchase Agreement (as defined below) referenced below free and clear of all liens, claims, encumbrances and other interests, except to the extent set forth in the Asset Purchase Agreement and the assumption of the Assumed Liabilities, pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the

---

1 The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Xtera Communications, Inc. (4611); Xtera Communications, Ltd. (9610); Xtera Communications Canada, Ltd. (2053); Xtera Communications Hong Kong Ltd. (7411); PMX Holdings, Ltd (4611); Azea Networks, Inc. (7821); Neovus, Inc. (2940); Xtera Comunicacoes do Brasil LTDA (0154); and Xtera Asia Holdings, LLC (4611). The mailing address for the Debtors, solely for purposes of notices and communications, is 500 W. Bethany Drive Suite 100 Allen, TX 75013.

2 Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (as defined herein), as applicable.

"**Bankruptcy Code**"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (ii) authorizing the assumption and assignment and sale of the Transferred Contracts and Leases (as defined below) identified by the Debtors and more fully described in the Asset Purchase Agreement dated as of November 15, 2016 (and as amended from time to time, including all schedules, exhibits and ancillary documents, as attached hereto as Exhibit A, the "**Asset Purchase Agreement**") between H.I.G. Europe – Neptune Ltd. (and any designee thereof, the "**Purchaser**") and Xtera Communications Inc. ("**Xtera Inc.**" or "**Seller**") together with its subsidiaries ("**Seller Affiliates**"), and (iii) granting certain related relief; and the Court having entered an *Order (1)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Scheduling Related Auction and a Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Bid Protections; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [D.I. 100] (the "**Bid Procedures Order**"); and the Court having entered the *Order Amending Order (1)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Scheduling Related Auction and a Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Bid Protections; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the*

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [D.I. 172]; and the Bid Deadline of January 23, 2017 at 5:00 p.m. prevailing Eastern time having passed with no competing bids having been submitted; and upon the Debtors filing of a notice cancelling the auction schedule for January 25, 2017 (the "**Auction**") and declaring H.I.G. Europe – Neptune, Ltd., as stalking horse purchaser (the "**Stalking Horse Purchaser**") to be the Successful Bidder [D.I. 274]; and the Court having held a hearing on January 30, 2017 (the "**Sale Hearing**") to approve the Sale; and the Court having reviewed and considered (a) the Motion, (b) the declarations filed in support of the Motion, (c) the objections to the Motion, (d) all responses to any objections and replies in further support of the Motion and (e) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"); and after due deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A. **Jurisdiction and Venue**. The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are Sections 105, 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002 and 6004. The consummation of the transactions contemplated by the Motion, the Asset Purchase

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Agreement and this Order is legal, valid and properly authorized under the Bankruptcy Code, the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court District of Delaware (the "**Local Rules**"), and all of the applicable requirements of the Bankruptcy Code and rules have been complied with in respect of such transactions.

C.     **Notice.**  As evidenced by the affidavits of service and publication filed with the Court [D.I. 57, 131, 137, 138, 141, 189, 193, 195, 199, 202], proper, timely, adequate, and sufficient notice of the Motion, the Bid Procedures, the Bid Procedures Hearing, the Bid Procedures Order, the Sale Hearing, the procedures for assumption and assignment and sale of Transferred Contracts and Leases (as defined in paragraph V below), the Proposed Cure Payments (as defined in paragraph D below), the Auction, the Sale and all transactions contemplated therein or in connection therewith, and all deadlines related thereto, was given under the particular circumstances and no further notice need be provided.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

D.     Actual written notice of the Motion, the Bid Procedures, the Bid Procedures Hearing, the Auction, the Sale Hearing, the procedures for assumption and assignment and sale of the Transferred Contracts and Leases, the cure payments proposed in respect of each Transferred Contract and Transferred Lease (the "**Proposed Cure Payments**"), the Sale and all transactions contemplated therein or in connection therewith, and all deadlines related thereto has been given to all interested persons and entities, including, without limitation: (i) all entities that assert any Lien, Claim or Interest (each as defined below) in the Transferred Assets; (ii) all parties to the Transferred Contracts and Leases assumed and sold and assigned pursuant to this

Order; (iii) all governmental taxing authorities that have or as a result of the sale of the Transferred Assets may have Claims or Liens, contingent or otherwise, against the Debtors or their properties; (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (v) all creditors (whether liquidated, contingent or unmatured) of the Debtors; (vi) all interested governmental, pension, environmental and other regulatory entities; (viii) the Office of the United States Trustee for the District of Delaware; (ix) all entities that heretofore expressed to the Debtors an interest in purchasing the Transferred Assets; and (x) all parties required to be provided notice pursuant to the Bid Procedures Order.  Other parties interested in bidding on the Transferred Assets were provided, upon request, access to one or more electronic data rooms that contain sufficient information to make an informed judgment on whether to bid on the Transferred Assets.  The foregoing constitutes proper, timely, adequate, and sufficient notice under the particular circumstances of these Chapter 11 Cases, and no further notice need be provided.

E.      The Publication Notice was published in *The New York Times* (National Edition), on December 9, 2016, and *New York Times* (International Edition) on December 13, 2016 [D.I. 141].  Such publication notices were compliant with the Bid Procedures Order, and sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

F.      **Business Justification.**  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Transferred Assets.  In light of the circumstances of these Chapter 11 Cases, time is of the essence in (i) consummating the Sale and all related transactions, (ii) preserving the viability of

the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, and their creditors and employees.

G.     **Bid Procedures Order.**  On December 6, 2016, this Court entered the Bid Procedures Order approving Bid Procedures for the Transferred Assets and scheduling dates in respect of the Sale process.  The Bid Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Transferred Assets.

H.     **Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Bid Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Transferred Assets and conducted the sale process in compliance with the Bid Procedures Order; (b) a reasonable opportunity has been given to any interested party to make the highest and best offer for the Transferred Assets; (c) the consideration provided by the Purchaser in the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets; (d) no other entity has offered to purchase the Transferred Assets for greater economic value to the Debtors or their estates; and (e) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or best offer for the Transferred Assets constitutes a valid and sound exercise of the Debtors' business judgment.  The Asset Purchase Agreement and the transactions contemplated thereunder were proposed, negotiated and entered into by and between the Debtors, on the one hand, and Purchaser, on the other hand, without collusion, in good faith and at arm's length.

I.     **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion, and all relief requested therein has been afforded to all interested parties.

J. **Sale in Best Interests.** The actions represented to be taken by the Debtors and the Purchaser are appropriate under the circumstances of these Chapter 11 Cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the Asset Purchase Agreement and of the Sale and all related transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

K. **No *Sub Rosa* Plan.** The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Sale and all related transactions do not constitute a *sub rosa* plan of reorganization.

L. **Allowed DIP Secured Claim**. The DIP Agent and DIP Lenders (as defined in the *Final Order (i) Authorizing Debtors to Obtain Postpetition Financing, (ii) Granting Adequate Protection to the Prepetition Secured Parties, and (iii) Granting Related Relief* [D.I. 152] (the "**Final DIP Order**")) are secured creditors of the Debtors and hold valid, binding, enforceable and perfected first-priority security interests in, on and against the Debtors, their estates and property of the estates, arising in connection with the DIP Credit Agreement (as defined in the Final DIP Order) and the First Amendment to Debtor-In-Possession Credit Agreement dated as of December 22, 2016 (the "**Amendment**"). Following the implementation of certain transactions on the Closing Date (the "**Closing**") (as authorized pursuant to this Order), the Purchaser (or its affiliate) will hold an allowed secured claim in the aggregate amount of not less than $8,001,239.23 (said amount being the estimated principal amount of the DIP Obligations (as defined in the Final DIP Order) as of the projected closing date of February 13, 2017) against each of the Debtors (the "**Allowed DIP Claim**") arising under the DIP Credit

Agreement and the Amendment, which claim is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent allowed or provided under the Final DIP Order (together with the Allowed DIP Claim, the "**Allowed DIP Secured Claim**").

M.     **Good Faith Purchaser**. The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law. Specifically: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Transferred Assets; (ii) the Purchaser complied in all respects with the provisions in the Bid Procedures Order; (iii) the Purchaser agreed to subject the Stalking Horse Agreement to the Court-approved competitive bid procedures set forth in the Bid Procedures Order; (iv) all payments to be made by the Purchaser in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the DIP Agent, the DIP Lenders and the Purchaser, and the Debtors; (vi) the negotiation and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times the Purchaser and the Debtors were represented by competent counsel and advisors of their choosing; (vii) the Purchaser did not in any way induce or cause the chapter 11 filings of the Debtors; rather the Debtors solicited the Purchaser to participate in the Sale and effectuate it through the Chapter 11 Cases; and (viii) the Purchaser has not acted in a collusive manner with any person in connection with it becoming the Stalking Horse Purchaser or through the Sale process. The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement. There has been no showing that the Debtors or the Purchaser engaged in any action or inaction that would cause or permit the transactions to be

avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

N.    **Prompt Consummation.** The Sale and the transactions related thereto must be approved and consummated as promptly as practicable to preserve the viability of the Transferred Assets as a going concern.

O.    **Corporate Authority.** Each Debtor, as Seller or Seller Affiliate, (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Transferred Assets has been duly and validly authorized by all necessary corporate action of each Debtor, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

P.    **Free and Clear Findings Required by the Purchaser**. The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale if the sale of the Transferred Assets to the Purchaser were not, pursuant to section 363(f) of the Bankruptcy Code, free and clear, except for Permitted Liens and Assumed Liabilities,[4] of (i) all liens (statutory or otherwise), mortgages, pledges, security interests, charges, rights of first refusal, hypothecations, encumbrances, restrictive covenants (collectively, the "**Liens**"), (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action

---

[4]    "**Permitted Liens**" and "**Assumed Liabilities**" shall have the meanings ascribed to them in the Asset Purchase Agreement.

(whether in law or in equity), obligations, rights of setoff, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing (collectively the "**Claims**"), and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "**Interests**").  Except for Permitted Liens and Assumed Liabilities, the Sale shall be free and clear of, and the Purchaser shall not be responsible for, any Liens, Claims or Interests, including, without limitation, in respect of the following: (i) any rights or Claims based on any successor or transferee liability; (ii) any labor or employment agreements; (iii) mortgages, deeds of trust and security interests; (iv) intercompany loans and receivables between the Debtors and any non-debtor subsidiary; (v) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vi) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor

Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing, including, without limitation, any *ad valorem* taxes assessed by any applicable taxing authority; (ix) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not a Transferred Contract or Transferred Lease that will be assumed and assigned pursuant to this Order and the Asset Purchase Agreement; (x) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Transferred Assets other than one free and clear of all Liens, Claims, and Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement free and clear of all Liens, Claims and Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

Q.     **No Fraudulent Transfer**. The Asset Purchase Agreement was not entered into with the intent of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia or

the laws of any foreign jurisdiction. The Purchaser is not a mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors or their respective estates and there is no continuity between the Purchaser and the Debtors. The Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and any of the Debtors. The consideration provided by the Purchaser for the Transferred Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets as demonstrated by the market having run the Sale process, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act) or the laws of any foreign jurisdiction.

R.    **Purchaser Not an Insider and No Successor Liability**. Immediately prior to the consummation of the Asset Purchase Agreement (the "**Closing Date**"), the Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and the Debtors and their non-Debtor affiliates. The transfer of the Transferred Assets and the assumption of the Assumed Liabilities (including any individual elements of the Sale) to the Purchaser, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Purchaser to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia or the laws of any foreign jurisdiction, based, in whole or in part, directly or indirectly, in any theory of law

or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the Asset Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the Excluded Assets, including, without limitation, the Purchase Price or the Professional Fee Reserve (as defined in the Final DIP Order), or assuming the Retained Liabilities, and the Purchaser is not holding itself out to the public as a continuation of the Debtors. The Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates. There is not substantial continuity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and the Purchaser. The Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.

S.    **Binding and Valid Transfer.** The transfer of the Transferred Assets to the Purchaser will be a legal, valid, and effective transfer of the Transferred Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all Claims, Liens and Interests (other than Permitted Liens and the Assumed Liabilities), as set forth in the Asset Purchase Agreement. Immediately prior to consummating the Sale, the Transferred Assets will constitute property of the Debtors' estates and good title is vested in the Debtors' estates within the meaning of Section 541(a) of the Bankruptcy Code and the Debtors will be the sole and rightful owners of the Transferred Assets. Upon and following the consummation of the Sale, the Purchaser shall be vested with good and marketable title to the Transferred Assets and shall be the sole and rightful owner of the Transferred Assets.

T.    **Satisfaction of 363(f) Standards.** The Debtors may sell the Transferred Assets free and clear of all Liens, Claims and Interests, except Permitted Liens and Assumed Liabilities,

because in each case one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Claims and Interests, and non-debtor parties to the Transferred Contracts and Leases who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. In all cases, each such person with Liens, Claims or Interests in the Transferred Assets is enjoined from taking any action against the Purchaser, the Purchaser's affiliates or any agent of the foregoing to recover any such Lien, Claim or Interest.

U. **Necessity of Order**. The Purchaser would not have entered into the Asset Purchase Agreement and will not consummate the transactions without all of the relief provided for in this Order (including, but not limited to, that the transfer of the Transferred Assets to Purchaser be free and clear of all Liens, Claims and Interests other than Permitted Liens and Assumed Liabilities). The consummation of the transactions pursuant to this Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

V. **Transferred Contracts and Leases**. The Debtors have demonstrated that it is an exercise of their sound business judgment to sell, assume and assign the executory contracts and unexpired leases listed on Sections 2.1(a)(i) and 2.1(a)(ii) of the Disclosure Schedule, respectively, of the Asset Purchase Agreement (collectively, the "**Transferred Contracts and Leases**", and individually, a "**Transferred Contract**" or a "**Transferred Lease**")[5] to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Transferred Contracts and Leases is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Transferred Contracts and Leases being assigned to the Purchaser are an integral part of the Transferred Assets being purchased by the Purchaser,

[5] For the avoidance of doubt, the Transferred Contracts and Leases are Transferred Assets.

and, accordingly, such assumption and assignment of the Transferred Contracts and Leases and the liabilities associated therewith are reasonable, enhancing the value of the Debtors' bankruptcy estates, and does not constitute unfair discrimination. Without in any way limiting any lease or contract counterparty's rights under Section 365 of the Bankruptcy Code, the (i) transfer of the Transferred Assets to the Purchaser and (ii) assignment to the Purchaser of the Transferred Contracts and Leases will not subject the Purchaser to any liability whatsoever prior to the Closing Date (defined below) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, any laws of any foreign jurisdiction based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust, successor or transferee liability. Under section 365(k) of the Bankruptcy Code, upon and following the consummation of the Sale and the assignment of the Transferred Contracts and Leases to Purchaser, the Debtors and their estates shall have no obligations or liabilities under any of the Transferred Contracts and Leases.

W.    **Cure and Adequate Assurance**. Subject to the terms of the Asset Purchase Agreement, the Purchaser has committed to cure on the Closing Date or the Purchaser has demonstrated its ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the Transferred Contracts and Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code. The Proposed Cure Payments or any other cure amount (the "**Cure Amount**") reached by agreement after receipt of an objection to a Proposed Cure Payment are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such Transferred Contracts and Leases. The evidence adduced or proffered during the

Sale Hearing and the Purchaser's promise to perform the obligations under the Transferred Contracts and Leases after the Closing shall constitute adequate assurance of its future performance of and under the Transferred Contracts and Leases, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. All counterparties to the Transferred Contracts and Leases, who did not timely file an objection to a Proposed Cure Payment or an objection to the assumption and assignment of the Transferred Contracts and Leases prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Transferred Contract or Transferred Lease and the assignment thereof to the Purchaser. The objections of all counterparties to the Transferred Contracts and Leases that filed an objection to the assumption and assignment of such parties' respective Transferred Contract, Transferred Lease, or Cure Amount relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that with respect to all such Transferred Contracts and Leases the payment of the Proposed Cure Payments is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the Debtors to the Purchaser of each of the Transferred Contracts and Leases. To the extent any Transferred Contract or Transferred Lease is not an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Transferred Assets.

X.     **Unenforceability of Anti-Assignment Provisions**. Anti-assignment provisions in any Transferred Contract or Transferred Lease shall not restrict, limit, or prohibit the assumption, assignment, and sale of the Transferred Contracts and Leases. Any such provisions

and any other provision in any Transferred Contract or Transferred Lease that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors should be deemed and are found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.

Y.    **Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

Z.    **Asset Purchase Agreement Not Modified**.  The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects and the terms of the Order shall not modify the terms of the Asset Purchase Agreement other than as explicitly set forth herein.

AA.    **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein and entry of this Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Motion is Granted.**  The Motion is granted as set forth herein and the relief requested therein with respect to the Sale is granted and approved in its entirety, as further described herein.

2.    **Objections Overruled.**  Any objections to the entry of this Order or to the relief granted herein or the relief requested in the Motion (as may be modified herein), including any objections to the Proposed Cure Payments or the assumption and assignment of any of the

Transferred Contracts and Leases, that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3.    **Approval.**  The Asset Purchase Agreement, and all the terms and conditions thereof, is approved.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the related transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Order.  The Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Asset Purchase Agreement, together with all additional instruments and documents that the Debtors or the Purchaser deem necessary or appropriate to implement the Asset Purchase Agreement and effectuate the transactions contemplated therein, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession the Transferred Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement.

4.    **Binding Effect of Order**.  This Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Liens, Claims and Interests, all counterparties to the Transferred Contracts and Leases, all successors and assigns of the Purchaser, each Debtor, the Transferred Assets, and any trustees appointed in the Debtors' Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code and this Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall

not be subject to rejection.  Subject to the terms and conditions of the Asset Purchase Agreement, the terms of this Order shall apply in the event the Sale under the Asset Purchase Agreement is consummated by and under any chapter 11 plan, and may be incorporated into any confirmation order.  Nothing contained in any chapter 11 plan confirmed in the Debtors' Chapter 11 Cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Order.

5.       **Injunction.**  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Transferred Assets to the Purchaser in accordance with the Asset Purchase Agreement and this Order. Following the Closing, except for persons entitled to enforce Assumed Liabilities and Permitted Liens, upon and following the consummation of the Sale all Persons (including, but not limited to, successors of the Debtors (including any trustee), creditors, investors, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding Liens, Claims or Interests in the Transferred Assets or against the Debtors in respect of the Transferred Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Liens, Claims or Interests of any kind or nature whatsoever against the Purchaser or any Affiliate of the Purchaser or any of their respective property, successors and assigns, or the Transferred Assets, as an alleged successor or on any other grounds.  No person shall assert, and the Purchaser and the Transferred Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation,

any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Debtors, or any obligation of any other party, under or with respect to, any Transferred Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of Debtors that is not an Assumed Liability or Permitted Lien; provided, however, the Debtors and the Purchaser retain the right to enforce the Asset Purchase Agreement and this Order and the Purchaser shall pay the Cure Amount in respect of the Transferred Contracts and Leases.

6. **General Assignment**. On and after the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Transferred Assets and a bill of sale transferring good and marketable title in the Transferred Assets to the Purchaser free and clear of all Liens, Claims and Interests. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7. **Transfer Free and Clear**. Except for the Permitted Liens and Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, on the Closing Date the Transferred Assets shall be transferred to the Purchaser as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Liens, Claims, and Interests of any Person, including, without limitation, all such Liens, Claims, and Interests specifically enumerated in Paragraph P of this Order, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the Petition Date, whether known or unknown, occurring or arising prior to such transfer, with all such Liens, Claims and Interests to

attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien, Claim or Interest claims or may claim a Lien, Claim or Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

8.      Notwithstanding any other provisions herein or in the Asset Purchase Agreement to the contrary, the liens of the Allen Independent School District ("**Allen ISD**") are Permitted Liens and shall attach to the Transferred Assets located in Allen ISD until payment of the ad valorem taxes for the year 2017 owed to Allen ISD is made by Purchaser (or its designee). For the avoidance of doubt, the 2017 ad valorem taxes owed to Allen ISD are an Assumed Liability of the Purchaser.

9.      **Valid Transfer**.  The transfer of the Transferred Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Transferred Assets and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Transferred Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (other than Permitted Liens and Assumed Liabilities).

10.      **Exculpation and Release**.  Upon the Closing, neither the Purchaser, the DIP Agent, the DIP Lenders, nor any of their respective affiliates, successors, assigns, representatives and advisors, in such capacities, shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Asset Purchase Agreement, the DIP Credit Agreement, the entry into and consummation of the Sale or any transactions authorized by this Order and the Final DIP Order, except as expressly provided in the Asset Purchase Agreement and this Order.

11.    **Direction to Release Interests.**  Upon the Closing, each of the Debtors'

creditors and any other holder of a Lien, Claim or Interest is authorized and directed to execute

such documents and take all other actions as may be necessary to release its Lien, Claim or

Interest in the Transferred Assets, if any, as such Lien, Claim or Interest may have been recorded

or may otherwise exist.  If any person or entity that has filed financing statements, mortgages,

mechanics' liens, lis pendens, or other documents or agreements evidencing a Lien, Claim or

Interest in the Debtors or the Transferred Assets shall not have delivered to the Debtors prior to

the Closing, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, releases of liens and easements, and any other documents

necessary for the purpose of documenting the release of all Liens, Claims or Interests that the

person or entity has or may assert with respect to any of the Transferred Assets, (i) the Debtors

and/or the Purchaser are authorized to execute and file such statements, instruments, releases,

and other documents on behalf of the person or entity with respect to the Debtors or the

Transferred Assets, and (ii) the Purchaser is authorized to file, register, or otherwise record a

certified copy of this Order, which shall constitute conclusive evidence of the release of all

Liens, Claims and Interests of any kind or nature whatsoever in the Debtors or the Transferred

Assets.  Each and every federal, state, and local governmental agency or department is hereby

directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Asset Purchase Agreement, including, without

limitation, recordation of this Order.  This Order shall be binding upon and shall govern the acts

of all Persons including without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments (including all taxing authorities), secretaries of state,

federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

12.     **No Interference.**  Following the Closing of the Sale, no holder of any Lien, Claim or Interest shall interfere with the Purchaser's title to, or use and enjoyment of, the Transferred Assets based on, or related to, any such Lien, Claim or Interest, or based on any actions the Debtors may take in their Chapter 11 Cases.

13.     **Surrender of Possession.**  All entities that are currently, or on the Closing may be, in possession of some or all of the Transferred Assets in which the Debtors hold an interest hereby are directed to surrender possession of the Transferred Assets to the Purchaser on the Closing, unless the Purchaser otherwise agrees.  The Purchase Price and the Professional Fee Reserve are not Transferred Assets and shall not be surrendered to Purchaser.

14.     **Post-Closing Actions and Transactions**.  The Debtors and the Purchaser, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Order.  Further, effective as of the Closing the Purchaser, its successors and assigns, shall be designated and appointed the Seller's and each Seller Affiliate's true and lawful attorney and attorneys, with full power of substitution, in the Seller's and each Seller Affiliate's name and stead, its successors and assigns, to demand and receive any and all of the Transferred Assets, and from time to time institute and prosecute in the name of the Purchaser, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at

law, in equity, or otherwise, that the Purchaser, its successors or assigns, may deem proper for

the collection or reduction to possession of any of the Transferred Assets, and to do all acts and

things with respect to the Transferred Assets that the Purchaser, its successors and assigns, shall

deem desirable. All of the foregoing powers granted to the Purchaser are coupled with an

interest and are irrevocable by the Debtors.

15.     **[Reserved.]**

16.     **No Discriminatory Treatment.**  To the extent provided by section 525 of the

Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any

permit, license, or similar grant relating to the operation of the Transferred Assets or the

Debtors' business sold, transferred, or conveyed to the Purchaser on account of the filing or

pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by

the Asset Purchase Agreement.

17.     **Assumption and Assignment of Transferred Contracts and Leases**.  Pursuant

to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the

closing of the Sale, the Debtors' assumption and assignment to the Purchaser, and the

Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the

Transferred Contracts and Leases is hereby approved, and the requirements of Section 365(b)(1)

of the Bankruptcy Code with respect thereto are hereby deemed satisfied, or shall be satisfied.

18.     The Debtors are hereby authorized in accordance with Sections 105(a), 363 and

365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the

Closing Date of the Sale, the Transferred Contracts and Leases free and clear of all Claims, Liens

and Interests (except for Permitted Liens and the Assumed Liabilities) and (b) execute and

deliver to the Purchaser such documents or other instruments as may be necessary to assign and

transfer the Transferred Contracts and Leases to the Purchaser.  For the avoidance of doubt, all unexpired leases constituting Transferred Leases shall be assumed by the Debtors prior to the expiration of the applicable period under Section 365(d)(4) of the Bankruptcy Code and assigned on the Closing Date to the Purchaser.

19.     The Transferred Contracts and Leases shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Transferred Contract or Transferred Lease (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, to the extent provided by Section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Transferred Contracts and Leases after such assignment to and assumption by the Purchaser.

20.     All defaults or other obligations of the Debtors under the Transferred Contracts and Leases arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as reasonably practicable by Purchaser paying the Cure Amounts.  The Purchaser may elect to take assignment of certain contracts and leases previously omitted from Sections 2.1(a)(i) and 2.1 (a)(ii) of the Disclosure Schedule annexed to the Asset Purchase Agreement (the "**Previously Omitted Contracts**") after the Closing and prior to the conclusion, dismissal or conversion of the Debtors' Chapter 11 Cases; provided, however, that such Previously Omitted Contracts shall not include any contracts or leases previously rejected by the Debtors and shall be conditioned upon Purchaser's satisfaction of any cure obligations. Upon designation of such Previously Omitted Contracts as "Assumed" by the Purchaser, the Debtors or Purchaser shall serve a notice on the

counterparties to such Previously Omitted Contracts that identifies the Purchaser of the Transferred Assets and provides notice that the Debtors are assuming and assigning the Previously Omitted Contract to the Purchaser. Any counterparties to such Previously Omitted Contracts in the United States shall have eight (8) Business Days (as defined in the Asset Purchase Agreement) from the date of service of the notice to object to the Cure Amount or the assumption and assignment. Any counterparties to such Previously Omitted Contracts located outside of the United States shall have sixteen (16) Business Days (as defined in the Asset Purchase Agreement) from the date of service of the notice to object to the Cure Amount or the assumption and assignment. If the counterparties, the Debtors and the Purchaser are unable to reach a consensual resolution with respect to an objection to the Cure Amount or assumption and assignment of a Previously Omitted Contract, the Debtors or Purchaser shall seek an expedited hearing before the Bankruptcy Court on notice to the affected counterparties to determine the Cure Amount and approve the assumption and assignment. If there is no objection, then the Debtors or Purchaser shall obtain an order of this Court fixing the Cure Amount and approving the assumption and assignment of the Previously Omitted Contract.

21.    Any provision in any Transferred Contract or any Transferred Lease that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the relevant Debtor is unenforceable, and all Transferred Contracts and Leases shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Transferred Contract or Transferred Lease that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Transferred Contract or Transferred Lease shall have any force and effect with respect to the assignments authorized by this Order,

and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code Section 365(f) and are otherwise unenforceable under Bankruptcy Code Section 365(e) and no assignment of any Transferred Contract or Transferred Lease pursuant to the terms of the Asset Purchase Agreement shall in any respect constitute a default under any Transferred Contract or Transferred Leases or require the provision of adequate protection in favor of any Transferred Contract or Transferred Lease counter-party. The non-debtor party to each Transferred Contract and Transferred Lease shall be deemed to have consented to such assignment under Bankruptcy Code Section 365(c)(1)(B), and the Purchaser shall enjoy all of the Debtors' rights and benefits under each such Transferred Contract and Transferred Lease as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

22.    The payment of the Cure Amounts by the Purchaser under the Asset Purchase Agreement and this Order (a) cures all monetary defaults existing thereunder as of the assignment of the Transferred Contracts and Leases to the Purchaser in accordance with the terms of the Asset Purchase Agreement; (b) compensates the applicable non-Debtor counterparties for any actual pecuniary loss resulting from such default; and (c) together with the evidence proffered or adduced at the Sale Hearing and the assumption of the Transferred Contracts and Leases by the Debtors and the assignment of the Transferred Contracts and Leases to the Purchaser constitutes adequate assurance of future performance thereof.

23.    Each non-Debtor party to a Transferred Contract or Transferred Lease hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Purchaser or its Affiliates, or the property of any of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the

Transferred Contracts and Leases, existing as of the Closing Date, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Transferred Contracts and Leases. Any party that may have had the right to consent to the assignment of a Transferred Contract or Transferred Lease is deemed to have consented to such assignment for purposes of Sections 365(c)(1) or 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to timely object to the assumption and assignment of such Transferred Contract or Transferred Lease.

24.     In the event or to the extent a counterparty to a Transferred Contract or Transferred Lease failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time.

25.     Nothing in the Asset Purchase Agreement or in this Order shall constitute an extension of the period set forth in Section 365(d)(4) of the Bankruptcy Code or to authorize the assumption or assumption and assignment of any lease of nonresidential real property after the expiration of such period without the applicable lessor's specific written consent.

26.     **No Successor Liability.**  Neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Lien, Claim or Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Transferred Assets prior to the Closing.  The Purchaser is not and shall not be deemed a "successor" to the Debtors or their estates, have, de facto or otherwise, merged with or into the Debtors or be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors under any theory of law or equity as a result of any action taken in

connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Transferred Assets.

27. Without limiting the foregoing, and except to the extent the Purchaser assumes the Assumed Liabilities, or takes the Transferred Assets subject to the Permitted Liens, or as otherwise set forth in the Asset Purchase Agreement, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Liens, Claims or Interests, including under any theory of successor or transferee liability, de facto merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to any of the following: (i) any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, antirust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations); (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (iv) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (v) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the (a) Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National

Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment, as amended, (h) the Americans with Disabilities Act of 1990, (i) COBRA; (j) state and local discrimination laws; (k) state and local unemployment compensation laws or any similar state and local laws; (l) state workers' compensation laws; (m) any other state, local or federal employee benefit laws, regulations, or rules or other state, local or federal laws, regulations or rules relating to wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (n) environmental liabilities, debts, Claims, or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the Transferred Assets prior to the Closing; (ix) any bulk sale law; and (x) any litigation, except in each case with respect to Permitted Liens and Assumed Liabilities.

28.    **Intellectual Property License Agreements**. Effective as of the Closing Date, counterparties to Pre-Petition Licenses (as defined in the Motion) have no rights against the Purchaser or the Transferred Assets under section 365(n)(1)(B) of the Bankruptcy Code with respect to such Pre-Petition Licenses except to the extent that Debtors seek to reject such Pre-Petition License and such counterparty filed a Notice of Election on or before January 18, 2017 at 4:00 p.m. (ET), in accordance with the Bid Procedures Order. Any counterparty to a Pre-Petition License, who has not timely filed a Notice of Election shall have the right to file a

rejection damages claim against the relevant Debtors pursuant to section 365(n)(1)(A) of the Bankruptcy Code, subject to all applicable deadlines and the allowance of such claim under applicable law, and no other rights, remedies or claims.

29.    **Governmental Matters.**  Nothing in this Order or the Asset Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a federal governmental unit of the United States under environmental statutes or under police and regulatory statutes or regulations that any entity would be subject to as the operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes transfer to the Purchaser of any licenses, permits, registrations, or other governmental authorizations and approvals without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.  Notwithstanding the foregoing sentence, nothing in this Order shall (i) be interpreted to deem the Purchaser as the successor to the Debtors under any successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to the Closing or for liabilities relating to off-site disposal of wastes by the Debtors prior to the Closing; (ii) create for any governmental unit any substantive right that does not already exist under law; or (iii) be deemed or construed to be, an admission of liability by the Debtors.

30.    Notwithstanding any provision in the Sale Motion, the implementing sale documents or this Order (collectively, "Documents"), contracts, leases, agreements, awards, intellectual property or other interests of the United States Department of Defense (collectively, "DOD Interests") shall not be included in the definition of Transferred Assets, Transferred Contracts or Transferred Leases for purposes of this Order and shall not be transferred pursuant to the Documents or otherwise be affected by the Documents.  With respect to the DOD

Interests, the Debtors and the Purchaser shall comply with all applicable non-bankruptcy law, federal regulations and statutes. For the avoidance of doubt, without limiting the foregoing: (1) nothing in the Documents shall be interpreted to set cure amounts with respect to any DOD Interest or to require the DOD to novate or otherwise consent to the transfer of any DOD Interest; and (2) the DOD's rights to offset or recoup any amounts due under, or relating to, any DOD Interests are expressly preserved. For the avoidance of doubt, the Debtors retain all rights of setoff, offset and recoupment in respect of the DOD Interests as permitted under applicable non-bankruptcy law.

31.    **Fair Consideration.** The consideration provided by the Purchaser for the Transferred Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sale may not be avoided under section 363(n) of the Bankruptcy Code. The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, with the intent of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors nor the Purchaser have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose. No other person or entity or group of persons or entities has offered to purchase the Transferred Assets for an amount that would provide greater value to the Debtors and their estates than the Purchaser. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

32. **Good Faith Purchaser**. The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided by this Order to consummate the Sale shall not affect the validity of the sale of the Transferred Assets to the Purchaser. The Purchaser is a purchaser in good faith of the Transferred Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code. As a good faith purchaser of the Transferred Assets, the Purchaser has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other potential bidders or any other parties interested in the Transferred Assets and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

33. **DIP Credit.** Pursuant to section 2.6(a) of the Asset Purchase Agreement and as authorized by sections 363(b) and 363(k) of the Bankruptcy Code, the Purchaser shall be entitled to credit (the "**DIP Credit**") in an amount equal to $8,001,239.23 of the Allowed DIP Secured Claim in connection with calculating the Cash Consideration payable to the Debtors at closing, which credit shall result in full and final satisfaction of the DIP Obligations[6] under the DIP Credit Agreement (as defined in the Asset Purchase Agreement), subject to, on the Closing Date, payment by the Debtors to counsel to the DIP Agent in the amount of $25,000 for fees and expenses of counsel to the DIP Agent in accordance with the Final DIP Order. To effectuate the foregoing DIP Credit, and as authorized in Paragraph 37 of the Final DIP Order, at the time of the Closing of the Transactions contemplated by the Asset Purchase Agreement, the Allowed DIP Secured Claim is and shall be deemed to be assigned to the Purchaser in accordance with the DIP Credit

[6] The DIP Obligations are well in excess of the extent of the DIP Credit and shall be extinguished and the DIP Liens released in connection with the Closing.

Agreement and all other applicable requirements to vest in the Purchaser all rights and entitlements to exercise the DIP Credit at the Closing.

34. **Segregation of Sale Proceeds.** All proceeds of the Sale in the form of Cash Consideration at the Closing shall be funded into a segregated escrow account established by the Debtors. Notwithstanding anything to the contrary in this Order, the Asset Purchase Agreement, any related documents, the Final DIP Order, or any other order of the Court or agreement of the Debtors, there shall be no distribution of any proceeds of the Sale, including to any of the Debtors' prepetition secured lenders, absent further Order of the Court.

35. **No Determination of Value.** Nothing in this Order, the Asset Purchase Agreement or any related document shall constitute or be deemed to constitute a determination or allocation of value with respect to or among any Transferred Asset and all parties' rights with respect to allocation concerning the Transferred Assets are reserved, *provided, however* the Purchaser may allocate the Purchase Price for tax reporting purposes without binding ~~UCC~~ the Creditors Committee or other parties.

36. **Fees of Cowen & Company.** Subject to paragraph 34 above, ~~Notwithstanding the foregoing,~~ to the extent that there is at least $900,000 in cash available after the DIP Obligations are satisfied in full or otherwise discharged at Closing in connection with the effectuation of the DIP Credit, and the sum of $1.7 million paid ~~or reserved~~ for the benefit of Jon R. Hopper, New Enterprise Associates 9, Limited Partnership, New Enterprise Associates 10, Limited Partnership, and ARCH Venture Fund VI, L.P., the next $900,000 of cash will be remitted to Cowen and Company, the Debtors' investment bankers, for fees incurred, ahead of Square 1 Bank and Horizon Technology Finance Corporation, or otherwise ordered by the Court.

37.    **Cooperation of Debtors**.  The Debtors will cooperate with the Purchaser to ensure that the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors are authorized to make such modifications or supplements to any bill of sale or other document executed in connection with the Closing as may be reasonably requested by Purchaser to facilitate such consummation as contemplated by the Asset Purchase Agreement and this Order (including, without limitation, adding such specific assets to such documents as may be reasonably requested by the Purchaser pursuant to the terms of the Asset Purchase Agreement).

38.    **Specific Provisions Regarding Unexpired Lease with Spur Ridge Real Estate Company.** Notwithstanding anything to the contrary contained in the Asset Purchase Agreement, the Motion or this Order, the Purchaser shall assume both the benefits and the burdens under the lease (the "**Allen, Texas Lease**") with Spur Ridge Real Estate Company, LLC (the "**Texas Landlord**") as of the date of the assignment of the Lease (the "**Lease Effective Date**"), including those burdens for rent and other charges which have accrued as of the Lease Effective Date but are not yet due under the terms of such Allen, Texas Lease (and thus are not payable as a cure cost pursuant to section 365(b)(1)(A)), including, but not limited to, any adjustments or reconciliations that become due under the Allen, Texas Lease and any and all property taxes that become or are due and payable under the Allen, Texas Lease.

39.    For the avoidance of doubt, and notwithstanding anything to the contrary contained in this Order, this Order shall not extinguish or affect any repair and maintenance obligations under the Allen, Texas Lease, all of which shall survive the assumption and assignment of the Allen, Texas Lease to the Stalking Horse Purchaser.

40.    Notwithstanding anything to the contrary contained in this Order, (a) the Purchaser shall not be liable to the Texas Landlord for any indemnification obligations related to

third-party claims with respect to the leased premises under the Allen, Texas Lease arising or occurring prior to the Lease Effective Date; but (b) the Debtors shall remain liable to the Texas Landlord for any indemnification obligations related to third-party claims incurred by the Texas Landlord with respect to the leased premises under the Allen, Texas Lease arising or occurring prior to the Lease Effective Date, to the extent of applicable insurance proceeds from insurance coverage and benefits maintained by the Debtors.

41. By agreement, the cure amount under Bankruptcy Code section 365(b) due and payable in connection with the assumption and assignment of the Allen, Texas Lease is $12,071.27 (collectively, the "**Spur Ridge Cure Claim**") as of the date of this Order. Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, on or before five (5) calendar days immediately following the Lease Effective Date, the Purchaser shall pay the Spur Ridge Cure Claim to the Texas Landlord, to the extent any portion of the Spur Ridge Cure Claim has not already been satisfied by payments from the Debtors.

42. **No Bulk Law Application.** No law of any state or other jurisdiction, including any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Order. No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale.

43. **Automatic Stay**. To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Purchaser to the extent necessary, without further order of the Court to allow the Purchaser to (a) give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) take any and all actions permitted by the Asset Purchase Agreement.

44.    **First Amendment.**   At or prior to the Closing of the Transactions contemplated by the Asset Purchase Agreement, the parties thereto shall enter into an amendment to the Asset Purchase Agreement (the "**First Amendment**"), the form and substance of which is attached here as **Exhibit B**.

45.    **Subsequent Amendments**.  The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented in accordance with the terms thereof, without further order of the Court, *provided* that such amendments are not inconsistent with this Order or adversely affect the Debtors' estates.

46.    **Subsequent Plan Provisions.**  Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Order.

47.    **Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

48.    **Non-Material Modifications.**  The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have any adverse effect on the Debtors' estates.

49.    **No Stay or Order.**  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed after its entry and shall be effective

immediately upon entry, and the Debtors and the Purchaser are authorized to close the transactions immediately upon entry of this Order. Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the transactions as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

50. **Appointment of Trustee.** The provisions of the Asset Purchase Agreement and this Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing.

51. **Time Calculations**. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

52. **Provisions Nonseverable**. The provisions of this Order are nonseverable and mutually dependent.

53. **Retention of Jurisdiction.** This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Transferred Assets to the Purchaser free and clear of Claims, Liens and Interests (other than Permitted Liens and the Assumed Liabilities), or compel the performance of other obligations owed by the Purchaser or the Debtors, (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser against (i) claims made related to any of the Retained Liabilities, (ii) any claims of

successor or vicarious liability related to the Transferred Assets or Transferred Contracts and the Transferred Leases, or (iii) any claims of Liens asserted on or in the Debtors or the Transferred Assets, of any kind or nature whatsoever (other than Permitted Liens and the Assumed Liabilities).

54. **Inconsistencies with Prior Orders, Pleadings or Agreements**. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale. To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

Dated: Jan 30, 2017
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE